## The State v. Holcomb, *Appellant.*

1. **Criminal Practice:** GRAND JUROR, CHALLENGE OF. The challenge of a grand juror can be made only on the ground that the juror is the prosecutor or complainant, or a witness on the part of the prosecution. R. S., secs. 1772, 1773.

2. ———: CHANGE OF VENUE. The finding of the trial court in a criminal case, on the question of the prejudice of the inhabitants of the county, on the hearing of an application for a change of venue, will not be interfered with by the Supreme Court, unless palpable injustice has been done the defendant.

3. **Policeman:** PROOF OF OFFICIAL CHARACTER. It is only necessary, in order to show that one was a policeman, in a city of the fourth class, to prove that he acted and was recognized as such officer. It is unnecessary to produce his official appointment as policeman.

4. **Criminal Law:** EVIDENCE. On the trial of one for murder, it is not competent for him to show by his statement, made at the time he purchased the pistol with which he killed the deceased, that his purpose in buying it was to kill mad-dogs.

5. **Cities of Fourth Class:** POLICEMAN: RIGHT TO MAKE ARRESTS. A policeman in cities of the fourth class, in the absence of an ordinance giving him the authority, has no right, without a warrant, to arrest a person for carrying concealed weapons.

6. ———: ———: MURDER. Although the attempted arrest by the officer in such case was illegal, yet if the defendant killed the de-

ceased with express malice, it constituted murder in the first or second degree, and not manslaughter.

*Appeal from Bates Circuit Court.*—HON. J. B. GANNT, Judge.

REVERSED.

*Parkins & Abernathy, T. W. Silvers, P. H. & A. T. Holcombe* for appellant.

(1) The lower court erred in overruling defendant's challenge of the grand jury. 4 Crim. Law Mag. 171; *State v. Bleekly*, 18 Mo. 428; *State v. Welsh*, 33 Mo. 33; *State v. Cornell*, 49 Mo. 282; *State v. Brown*, 64 Mo. 368. (2) The evidence on the question of the prejudice of the inhabitants of the county showed defendant was entitled to a change of venue. 5 Crim. Law Mag. 797; *State v. Nash*, 7 Ia. 347. (3) The court erred in admitting in evidence the records of the city of Butler, and, also the oral testimony of witnesses that Aleshire *acted* as night watchman. In cities of the fourth class, the office of night watch, or patrol, must be created by ordinances of the board of alderman. R. S., sec. 4940; *Ex parte Snyder*, 64 Mo. 58. (4) The court erred in not permitting defendant to prove his object in buying the pistol. Whart. Crim. Evid., sec. 753; *State v. Monroe*, 5 Ga. 85; *State v O'Conner*, 11 Nev. 416; *State v. Ware*, 62 Mo. 601; *State v. English*, 67 Mo. 136; *Thorndike v. Boston*, 1 Met. 242; *People v. Arnold*, 15 Cal. 476; 1 Greenl. Ev., sec. 108. (5) The fifth instruction for the state told the jury that if defendant had concealed upon his person in the presence of Kelly a deadly weapon, and that Kelly had reasonable ground to believe that defendant had such concealed weapon, Kelly had a right to make the arrest without a warrant. This was erroneous, as the right to arrest without a warrant is limited to misdemeanors occurring in the pres-

The State v. Holcomb.

ence of the officer, and at common law it has always been confined to affrays and breaches of the peace. *Quinn v. Heisel*, 40 Mich. 576 ; *State v. Beck*, 76 N. C. 10 ; 1 Bishop C. P., sec. 640 ; 9 Cent. Law Jour. 320. (6) The third and fourth instructions given for the state were erroneous. The former, because based on the theory of an unlawful assault, and both it and the fourth are inconsistent with the other instructions in the case. (7) Whether there was any express malice in the case was a question for the jury. If defendant, without malice or premeditation, in the heat of passion and in resisting a trespass, killed the deceased, he would be guilty merely of manslaughter. *State v. Edwards,* 70 Mo. 592.

*D. H. McIntyre*, Attorney General, for the state.

(1) The defendant was rightly put on his trial before the first indictment was formally quashed. *State v. Eaton*, 75 Mo. 586. (2) The finding of the trial court on the question of the change of venue is conclusive, in the absence of evidence to show manifest injustice was done the defendant. *State v. Sayers*, 58 Mo. 585 ; *State v. Whitton*, 68 Mo. 91 ; *State v. Gay*, 69 Mo. 430. (3) The records of the city of Butler, offered in evidence, were admissible. 1 Greenl. Evid., sec. 92 ; 1 Bishop Cr. Pr., sec. 1130 ; Whar. Cr. Ev., sec. 164 ; *State v. Roberts*, 52 N. H. 492 ; *Rex v. Gordon*, 2 Leach, 581. (3) The evidence offered as to defendant's statement concerning his purpose in buying the pistol was rightly excluded. It was incompetent and irrelevant. *State v. Evans*, 65 Mo. 579. (4) The state's third instruction properly declared the law. Although the attempted arrest may have been illegal, if the killing was done with express malice, it was murder, and if done with deliberation, murder of the first degree. *The State v. Johnson*, 76 Mo. 126 ; *Roberts v. The State*, 14 Mo. 138 ; *Rafferty v.*

*The People,* 72 Ill. 37; 1 East P. C. 311. (5) So the state's fifth instruction was proper. 1 Greenl. Evid., sec. 92; *State v. Green,* 66 Mo. 631. In attempting to shoot Kelly, he was guilty of attempting to commit a felony, and it was the duty of the deceased to interfere to prevent it, even if he were a private person, and he was entitled to the same protection as though he were an officer. 1 Bish. Cr. Proc., sec. 165 (3 Ed.); 1 Whar. Cr. Law, sec. 433 (8 Ed.); Foster's Crown Law, 309. Whether deceased were a private person or an officer, the defendant was guilty of murder in killing him, he having a right to interfere, and proceeding according to law. 2 Bish. Cr. Law, sec. 652 (7 Ed.). And if Kelly, under the circumstances, named in the instructions, was attempting to arrest defendant and defendant shot at him, and by mistake or accident killed the deceased, he is guilty of murder. 1 Bish. Cr. Law, sec. 328 (7 Ed.); *Golliher v. Commonwealth,* 2 Duval (Ky.) 163; *The King v. Plummer,* 12 Modern R. 627; *Angell v. State,* 36 Tex. 542; *State v. Raymond,* 11 Nev. 98. (6) The instructions refused for defendant should not have been given. (7) This court will not disturb the finding of the trial court as to the charge of prejudice against the juror, James Collier. The evidence must clearly preponderate against the juror. A mere doubt of his impartiality is not enough. *Davison v. People,* 90 Ill. 221; *State v. Dumphey,* 4 Minn. 438; *State v. Ayers,* 23 N. H. 301; *Moncrief v. State,* 59 Ga. 470; *Nash v. State,* 2 Tex. App. 362. If the examination of the juror, upon his *voir dire,* covers the evidence impeaching his incompetency, it is but an oath against an oath, and the court will be slow to impute perjury to the juror. Thompson and Merriam on Juries, sec. 304, p. 346; *Epps v. State,* 19 Ga. 102; *Hudgins v. State,* 61 Ga. 182; *Com. v. Hughes,* 11 Phila. 430; *Nash v. State,* 2 Tex. App. 362.

BLACK, J.—Defendant was indicted at the March

term, 1883, of the Bates circuit court, for the murder of Aleshire. A second indictment was preferred at the following June term, and the first was thereby superseded and properly quashed. There was a mis-trial, then an application for change of venue, a second trial at the March term, 1884, and a verdict of guilty of murder in the second degree.

The evidence for the state tended to show that Aleshire, the deceased, and Kelly, were night watchmen, or police officers of the city of Butler. Kelly searched and took from defendant a pistol, a year or more before the killing. He also searched the defendant on several other occasions, but found no pistol, the last being about a month before the homicide. Defendant complained to the marshal and others, and insisted that these searches were unreasonable. About three o'clock, p. m., of the day of the homicide, he purchased a pistol, loaded it at Esquire Cannon's office, and by the friendly persuasions of the latter, left it there for a time. He got it again and left it at several other places during the day. There is evidence to the effect that he was drinking some, and had threatened to kill the police if they interfered with him again, of all which Kelly was notified during the day. About eleven o'clock at 'night, defendant got his pistol, started home, and on the way met with Kelly and Aleshire, who were on duty. Kelly's evidence of what then transpired is: "I said, Sumner, give me that pistol. He said d——n you, you wont get it. He then drew the pistol and presented it. Aleshire moved around to grab him, and just then the pistol went off. They fell to the sidewalk." On cross-examination: "Defendant threw his overcoat off, and ran back with his pistol drawn. He drew it out of his pocket after I demanded it."

The evidence for the defence tended to show that defendant purchased the pistol to protect himself and home, which was in the suburbs of the town, from mad

dogs ; that he left the pistol at the several places during the day to avoid trouble on the streets, and that he had no dislike towards Aleshire, and that his dislike was towards Kelly only.

1.   To the second indictment, the defendant filed a plea in abatement, on the ground that he was in custody and was not offered an opportunity to object to the grand jurors.   Evidence was heard and the plea over-ruled.   It is clear that the defendant was brought into court on the first day of the term, to the end that he might object to the grand jurors, as a plea of a like character had been interposed to the first indictment; but it would seem the defendant did not understand that he was to be again indicted.   The plea, however, was wholly insufficient and was properly overruled.   Challenge to the array, or to any one of the grand jurors, is no longer allowed, except on the ground that the juror is the prosecutor or complainant, or a witness on the part of the prosecution.   Secs. 1772, 1773, R. S.   The plea does not claim that the jurors, or any of them, were objectionable for these, or indeed for any reason.   It would be a mere idle ceremony to sustain the plea, when the defendant makes and has no valid ground for a challenge.

2.   The application for a change of venue was based on the ground of prejudice of the inhabitants of Bates county.   Much evidence was heard upon the one side and the other.   The rule recently asserted is " that the finding of the circuit court on that issue is conclusive, and not to be interfered with by this court, unless it appears that palpable injustice has been done."   *State v. Guy*, 69 Mo. 430 ; see, also, *State v. Wilson*, 85 Mo. 134. While the evidence shows a pretty strong leaning adverse to the defendant, in localities in the county, yet there is nothing disclosed which will warrant this court in inter-fering with the finding of the circuit court, guided by the rule above announced.

3.   The state read in evidence an entry from the

city records, appropriating fifteen dollars per month to pay a night watch, provided the citizens would pay the balance of his salary, and the night watch would act as deputy marshal; a subsequent order appointing him night watch at a specified salary, and various appropriations in payment of his salary, in which he is styled night watch and night police, and in some instances without any official designation. The marshal testified that he and the council appointed Kelly policeman and deputy marshal, and that Aleshire acted in the same position. Much other parol evidence was to the effect that they were recognized by the city officers and citizens as policemen, and that Aleshire was paid by the citizens. To all of which evidence the defendant objected.

It was not necessary to produce the official appointment of these persons, either as assistant marshals, policemen, or night watches. It was sufficient to show that they acted and were recognized as such officers. 1 Greenl. Evid. (13 Ed.) sec. 92; Wharton Evid., sec. 1315; *Wickersham v. Woodbeck*, 57 Mo. 59; *Bank of United States v. Dandridge*, 12 Wheat. 70. The law with respec to cities of the fourth class does not require that a policeman or deputy or assistant marshal shall be appointed in any particular way. A resolution or order, as was made as to Kelly, was all that was required. Dillon on Mun. Corp., sec. 151.

4. Nor is there any merit in the point that the written dying declaration of Aleshire should have been produced, or if lost, the newspaper copy offered. He signed no written declaration. What he stated was partly, it is said, written down by another, but not signed, or even formally read to him. It would have been a good objection to reading this writing in evidence, had it not been lost and offered, that the witness who heard the declarations should be produced, to the end that he might be cross-examined. The writing

was at most but a memorandum, made by the witness who heard the statements.

5.   Wright, from whom the defendant purchased the pistol on the day of the homicide, was asked : "What did defendant say he was buying the pistol for?" The witness was not allowed to answer the question. It is fair to presume the purpose was to show that he said he was getting it to kill dogs. If this evidence is admissible at all it must be on the ground that the statement then made was a part of the *res gestæ*. In Wharton on Evidence, section 259, it is said : "The *res gestæ* may, therefore, be defined as those circumstances which are the undesigned incidents of a particular litigated act, and which are admissible when illustrative of such act." They may consist of declarations of any one concerned in the particular act in question. Their admissibility depends much upon their direct relation to the act in question. If so disconnected as not to be explanatory of the act, or matter in issue, or so far prior as to give opportunity for their preparation, the declarations are inadmissible. *State v. Ware*, 62 Mo. 597 ; *State v. Dominique* 30 Mo. 585 ; *Green v. State*, 13 Mo. 382 ; *Stone v. Segur*, 11 Allen, 568.   In *Evans Case*, 65 Mo. 579, the offer was to show what defendant said about an hour before the killing, and at a time when the deceased passed the wagon in which defendant and the witness were riding. It was held the declarations were not a part of the *res gestæ*, and the evidence offered was open to the objection of allowing a party to manufacture evidence for himself. It is true the declarations here offered were made in connection with the purchase of the pistol, but they were no part of the litigated act, the homicide. They were prior thereto, and wholly disconnected. While incidents and declarations, unconsciously associated with the matter directly in issue, may be received, yet, to admit the declarations offered in this case, is to open wide the door to the party to make evidence for himself.   On the first

impression the evidence might appear to be admissible, but upon consideration it was clearly inadmissible, and, therefore, properly excluded.

6. The fifth instruction given for the state raised and presented pointedly the question whether Kelly, acting as a policeman, or watchman, could rightfully, without a warrant, arrest the defendant for carrying a concealed weapon in the presence of the officer. When and under what circumstances, a sheriff or constable may arrest, without a warrant, is reasonably well settled, for they are common law officers; but the same cannot be said of policemen or watchmen, and this is no doubt due to the fact that their powers are generally defined by statute or municipal ordinance. The powers of policemen to arrest with or without a warrant, in cities of the second and third class, are clearly defined by statute, and in the latter class, are equal to those of the marshal. The provisions of the statute with respect to these officers, in cities of the fourth class, the city of Butler being of that class, are as follows:

"Sec. 4998. The marshal shall be chief of police, and shall at all times have power to make or order all arrests, with proper process, for any offence against the laws of the state, or the city, by day or by night, and bring the offender to trial before the proper officers of the city, and to arrest without process in all cases where any such offence shall be committed or attempted to be committed in his presence."

"Sec. 4999. The policemen of the city, in the discharge of their duties, shall be subject to the orders of the marshal only as chief of police; but any marshal, assistant marshal, or policeman, may be removed by the board of alderman for any neglect of duty." There is the further general provision (sec. 5001) that: "The duties, powers, and privileges of all officers, of every character, in any way connected with the city government, not herein defined, shall be defined by ordinance."

The first of these sections does not give to the marshal the power to arrest without a warrant for a past offence. It was so said in *State v. Underwood*, 75 Mo. 231; but it certainly does give him the power to arrest without a warrant for an offence committed in his presence. The powers of policemen and their duties, it will be seen, are not at all determined by the statute, but the right to fix and prescribe their duties rests with the mayor and board of aldermen. It would, we think, be competent for the mayor and board of aldermen, by ordinance, to give to the policemen the powers possessed by the marshal, in respect to arrests, certainly so as to all offences committed within the city limits, but no such ordinance relating to the duties of police officers was offered in evidence in this case. Nor does it appear that the defendant was about to be arrested for the infraction of any city ordinance, but the offence was one prohibited by the general law of the state. The case is wholly unlike that of *State v. Grant*, 76 Mo. 236. There the special act defined the powers and duties of the board of police commissioners, and it was the evident purpose of the act that those powers should be carried out by and through the policemen appointed by the board. Here, in cities of the fourth class, such officers, as well as watchmen and patrols, are recognized as proper officers in the administration of the affairs of the city. Their duties, however, are not defined by statute, but the duty of doing this is left to and required of the mayor and board of aldermen. What these powers and duties are, in the city of Butler, we cannot say, for there was a failure to put in evidence any ordinance in this regard, doubtless because there was none.

"From time immemorial, constables and watchmen had authority, without warrant, to arrest those whom they saw engaged in an affray, or breach of the peace, and to detain them until they should find proper security." *City Council v. Payne*, 2 Nott & McCord's R. 475.

In the absence of any such ordinance, we might indulge in the presumption that those officers were invested with the general and usual authority to arrest those engaged, in their presence, in an affray or breach of the peace, as was done in *Doering v. The State*, 49 Ind. 60, but we can go no further in the face of these statutes. Without any ordinance, the right of this officer to arrest without a warrant, for such an offence as that here in question, was no greater than that of any other citizen. It is not pretended, nor can it be maintained, that a citizen could rightfully make such an arrest, or disarm a person, doing no more, at the time, than carrying a concealed weapon. The fifth instruction, therefore, should not have been given.

Although the attempted arrest, by the officer, was illegal, yet if the defendant killed deceased with express malice, the killing would be murder in the first or second degree, and not manslaughter in any of its degrees. *Roberts v. State*, 14 Mo. 138; *State v. Johnson*, 76 Mo. 123. There was evidence of express malice, and hence the third and fourth instructions, given at the request of the state, were proper.

Those instructions given for the state and defendant, and which are based on the theory of fact, that Aleshire and Kelly were not officers, were incorrect in this, that they are made to depend upon the hypothecated fact that they, Kelly and Aleshire, were not officers at all. Whether police officers or not, the attempted arrest was, for the reason before stated, illegal. In other respects those instructions are correct enough, and can readily be made to conform to these views. The other instructions given by the court, and not before noticed, are not objectionable. Defendant's eighth instruction should be given. The judgment is reversed and the cause remanded for new trial. Norton, J., concurs in the result. The other judges concur.