STATE of Missouri, Respondent,

v.

George Ben EDMONDSON, Appellant.

No. 49591.

Supreme Court of Missouri,

Division No. 1.

June 8, 1964.

John B. Newberry, Springfield, for appellant.

Thomas F. Eagleton, Atty. Gen., Jefferson City, Dale Reesman, Sp. Asst. Atty. Gen., Boonville, for respondent.

HOUSER, Commissioner.

George Ben Edmondson, convicted of robbery in the first degree, § 560.120, V.A.M.S., and committed to the Department of Corrections for a period of 30 years, has appealed.

About 9:25 p. m. on December 23, 1961, after the J. C. Penney Store at Springfield closed its business for the day, two of its employees, Costello and Stockton, carried five money bags containing several hundred dollars of store receipts to the night depository of Union National Bank on the public square. The night depository, located at the front of the bank, is about 2 feet wide and 18 inches high. Night depositors are provided with a key to the chute in the night depository. After they approached the bank and as Costello was ready to insert the key they were accosted by a man in a trench coat, who had been observed standing in the doorway of an adjacent building. He ordered them to drop the money bags. A carbine rifle protruded about 18 inches from under his coat. Stockton and Costello, not desiring to "argue with the gun," dropped the bags and at the man's direction went around the corner, faced the side of the bank building

and put their hands up against the wall. Directed to "stay there," and told that "When this gun shoots it isn't particular," they stayed in this position until they no longer heard the footsteps of the fleeing man. Then they went around the corner, found that three money bags were missing, took the two money bags still lying on the ground, and deposited them. At the trial both Costello and Stockton identified defendant as the man who robbed them.

On December 25 the Sheriff of Greene County wired the sheriff at Albuquerque, New Mexico information that George Ben Edmondson was wanted for investigation of armed robbery of the J. C. Penney Store. In response to this telegram, but without a warrant for arrest or a search warrant, the city police department of Albuquerque, having found that one Edmondson was registered at a local motel, called the room telephone about 9 p. m., talked to this defendant and informed him that the place was well covered, and asked him to come to the front door. Edmondson did so and identified himself. The officers placed him under arrest, and he was handcuffed. The officers told him they were looking for "some items" in connection with a report they had, and that they wanted to look in the motel room. Edmondson said "Go in; you are welcome to come in." Inside the officers found two shaving kits containing $4,866.49, hidden behind a panel in the bathroom. Edmondson's automobile was parked about 10 feet from the front door, on a public parking lot. The police searched the automobile at the motel, at the scene of the arrest, but it was "too cold" and a thorough search was not made. After Edmondson was taken into custody the officers took the automobile to the police station, where it was driven into the police department garage for a thorough search. It was in the custody of a detective. Still acting without a search warrant and at about 12:30 or 1 o'clock on the morning of December 26 the city police officers thoroughly searched the car, this time finding a small piece of paper on the floorboard

under the driver's seat, on which was typed "Not for Deposit J. C. Penney Co." and a number 282 written in ink. This was later identified as an identification slip which had been placed on the money bags owned by J. C. Penney Company to identify the bags and the number 282 was the number of the key which J. C. Penney had to open the night depository box at the bank. This slip of paper, marked State's Exhibit E, was introduced in evidence over defendant's objection that the search and seizure under which it was obtained violated the defendant's rights under the Federal Constitution and the constitutions of New Mexico and Missouri. The constitutional question was kept alive in defendant's motion for new trial and briefs on appeal.

The Fourth Amendment to the Federal Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

■ Under the search and seizure provisions of the federal and state constitutions a search warrant ordinarily must issue before a search and seizure may be made. There is an exception where the search and seizure is made as an incident to a lawful arrest.

Although appellant contends that the arrest was unlawful we need not determine the point, but will assume that the arrest was lawful, in view of the fact that we have determined that the search violated appellant's constitutional rights.

■ Under the latest decision of the Supreme Court of the United States, Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, decided on March 23, 1964, this search was not incident to the arrest. In Preston three men acting suspi-

ciously had been seated in an automobile parked in a business district since 10 p. m. Shortly after 3 a. m. the next morning they were questioned by police officers. Having given unsatisfactory answers they were arrested for vagrancy and taken to police headquarters. An officer drove the automobile to the police station, from which it was towed to a garage. Soon after the men had been booked at the police station police officers went to the garage, searched the car, found two loaded revolvers in the glove compartment, entered the trunk through the back seat of the car and there found other items which were used in a prosecution in federal district court of a charge of conspiracy to rob a federally insured bank. The court in Preston stated the rule that when a person is lawfully arrested the police have a right to make a contemporaneous search of the person of the accused, of things under the accused's immediate control and, depending upon the circumstances, of the place where he is arrested. The court stated that the rule allowing contemporaneous searches is justified by the need to seize weapons, etc. which might be used to assault an officer or effect an escape, and the need to prevent destruction of evidence of the crime, but held that "these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. Agnello v. United States, supra, 269 U.S. [20] at 31, 46 S.Ct. [4] at 5, 70 L.Ed. 145. Here, we may assume, as the Government urges, that, either because the arrests were valid or because the police had probable cause to think the car stolen, the police had the right to search the car when they first came on the scene. But this does not decide the question of the reasonableness of a search at a later time and at another place. * * * The search of the car was not undertaken until petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime * *. Nor, since the men were under arrest at the police station and the car was in police custody at a garage, was there any danger that the car would be moved out of the locality or jurisdiction. See Carroll v. United States, supra, 267 U.S. [132], at 153, 45 S.Ct. [280] at 285, 69 L.Ed. 543. We think that the search was too remote in time or place to have been made as incidental to the arrest and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible."

■ Under Preston the search of appellant's automobile was not incidental to his arrest. When the search was made appellant was under arrest and the automobile was in a police garage, in the custody and under the surveillance of a detective. There was no need to search the automobile for the purpose of seizing weapons, etc. which might be used to assault an officer or effect an escape. There was no need to search the automobile to prevent the destruction or spiriting away of evidence of the crime. There was no emergency. There was ample time for the officers to apply for a search warrant. The search violated the Fourth Amendment to the Federal Constitution and the slip of paper, Exhibit E, obtained as a result of an unconstitutional search, was inadmissible in evidence. Under Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, all evidence obtained by searches and seizures in violation of the Fourth Amendment to the Federal Constitution is inadmissible in a criminal trial of a state charge in a state court. Because of the highly incriminating and obviously damaging nature and character of this inadmissible evidence, the judgment of conviction must be reversed.

Appellant's failure to file a motion to suppress Exhibit E, as contemplated by Sup.Ct. Rule 33.03, V.A.M.R., see State v. O'Brien, Mo.Sup., 252 S.W.2d 357, 359, and State v. Lee, 361 Mo. 163, 233 S.W.2d 666, 669, is excused because the evidence shows that appellant did not know that the officers were in possession of Exhibit E. There is no evidence that, prior to the time during trial that the exhibit was produced in open court, appellant was aware of the grounds for such a motion. Appellant apparently had no reason to anticipate that this evidence would be introduced and is entitled to claim surprise.

Accordingly, the judgment of conviction is reversed and the cause is remanded for a new trial.

COIL and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur, except HENLEY, J., not sitting.