STATE of Missouri, Respondent,

v.

Mark T. GALAZIN, Appellant.

No. SC 83415.

Supreme Court of Missouri,
En Banc.

Oct. 23, 2001.

Rehearing Denied Nov. 20, 2001.

Timothy R. Cisar, Lake Ozark, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea Mazza Follett, Asst. Atty. Gen., Jefferson City, for Respondent.

JOHN C. HOLSTEIN, Judge.

Defendant Mark Galazin was found guilty of one count of felony driving while intoxicated and other charges after he was stopped and arrested in the town of Lakeview, Missouri. The arresting officer was a Lake Ozark, Missouri, police officer. Following opinion by the court of appeals, this Court granted transfer. *Mo. Const. art. V, sec. 10.* The judgment is affirmed.

I.

Officer Patrick of the Lake Ozark police department, responding to a radio call, stopped Mark Galazin in Lakeview, Miller County, Missouri after observing his vehi-

cle cross the center line of a road several times in a short distance. Galazin had no valid driver's license, and he failed three separate field sobriety tests. His speech was slurred, he smelled of intoxicants, and there were empty beer containers in his vehicle. The officer arrested Galazin, and at the station he refused to submit to a chemical or breath test. Galazin was charged with driving while intoxicated, sec. 577.010, RSMo 2000, failure to drive on the right side of the road, sec. 304.015, RSMo Supp.1996, and driving while his license was suspended, sec. 302.321, RSMo Supp. 1997.

At trial, as the officer began to testify about his observations of Galazin's erratic driving, defense counsel objected and approached the bench:

> Mr. Cisar: I have a foundation objection and I guess a relevancy question objection. He's testified he's a Lake Ozark police officer. He's testified he's essentially outside the city limits of Lake Ozark in the City of Lakeland at the corner of Business 54 and W at the Route C mart there. Lakeland may or may not have had a mutual aid compact or contract with Lake Ozark. They've now become a part of Lake Ozark this past election, but they weren't at the time. He's not inside the city limits of Lake Ozark. He's not indicated any necessity to come outside the city limits of Lake Ozark. He's about ready to testify about matters leading up to an arrest of Mr. Galazin outside the city limits of Lake Ozark, and I would object on the basis of foundation and relevancy.
>
> The Court: Mr. Rives?
>
> Mr. Rives: Well, Your Honor, this is a Miller County case, and the witness does operate in Lake Ozark which is within the confines of Miller County, and there is a mutual aid contract between the area where the defendant was arrested and Lake Ozark.
>
> Mr. Cisar: There's been no evidence of that though.
>
> Mr. Rives: If you want to voir dire the witness, voir dire the witness.
>
> Mr. Cisar: It's not my burden.
>
> The Court: He's making the objection, so you have to establish it.
>
> [By the State]:
>
> Q: Officer Patrick, you previously testified that you were an officer with the Lake Ozark Police Department; correct?
>
> A. Yes, sir.
>
> Q: And you were so on or about June 21, 1998?
>
> A: Yes, sir.
>
> Q: And you made contact with Mr. Galazin's vehicle in what area?
>
> A: Lakeview.
>
> Q: Lakeview, and that's Lakeview, Missouri?
>
> A: Yes, sir.
>
> Q: And did at or about June 21, 1998, to the best of your knowledge and belief, did Lake Ozark have a mutual aid contract with the City of Lakeview?
>
> A: Yes.
>
> Mr. Cisar: Your Honor, I'm going to object to that question on the basis of hearsay and best evidence. If there is such an agreement between the two city governments, it should be produced by that evidence and not by this gentleman's hearsay evidence, and he's not the contract—in other words, he doesn't have it on him, he's not the one that drafted it. If there's such a document in existence, that's the best evidence.
>
> The Court: As far as whether or not he can testify whether there was a

mutual aid agreement, I agree with him. I think you can ask this officer what their duties were and what they were directed to supervise, and then if the objection is made that the mutual aid agreement has to be proved, the Court is going to overrule that. If you question him with regard to what was his territory, where he patrolled, then the Court's going to allow you to question him.

\* \* \*

[By the State]:

Q: Officer Patrick, on or about June 21, 1998, you were employed by the City of Lake Ozark?

A: Yes.

Q: And in the capacity as a police officer?

A: Yes.

Q: And for lack of a better word, what was your area of operation?

Mr. Cisar: Your Honor, I am going to object to that on the basis again of hearsay and best evidence and foundation and ask permission to voir dire the witness.

\* \* \*

[By the Defense]:

Q: Officer Patrick, the duties that you were—your area of operation that Mr. Rives was about ready to ask you about, you were told those by someone else?

A: Yes, sir, I was, by my training supervisor.

Q: And you've not read any specific contract that between Lakeview and the City of Lake Ozark regarding mutual aid; is that correct?

A: That would be correct.

Q: So everything you have knowledge of regarding your area of operation is someone else telling you that; is that correct?

A: That is correct.

Mr. Cisar: I would renew my objection, Your Honor.

The Court: If he is going to relate what someone told him, the objection is sustained. If he's going to testify based upon his carrying on of his duties, the objection is overruled.

Mr. Cisar: May I voir dire one more?

The Court: You may.

Q: Officer Patrick, your duties and your area of operation were how did you acquire this information?

A: I was told this by my training officer at the time in which I was trained in the City of Lake Ozark.

[At the Bench]:

Mr. Cisar: Your Honor, everything he then is going to testify to is going to be something he was told by his training officer.

The Court: Where he works out of would not be hearsay.

Mr. Cisar: He was told he's allowed to work out of these areas, and that's how he got his information Your Honor.

The Court: That's a different issue of what authority there is for him to do that. If the question is what area he worked out of, the objection is overruled. You may continue, Mr. Rives.

Due to two prior intoxication-related offenses within ten years, Mr. Galazin was found to be a persistent offender and sentenced to a term of four years imprisonment for driving while intoxicated. He was sentenced to two days in the county jail and a $500 fine for failure to drive on the right half of the highway. He appeals only the driving while intoxicated conviction.

## II.

■ Rather than reasserting the evidentiary objections made at trial, the defendant makes the sole point on appeal[1] that the state presented "no evidence" that the officer had authority to arrest within the town of Lakeview, and that the trial court therefore should not have allowed the officer to testify about his stop, observations, and arrest of the defendant. Both his objections at trial and his point on appeal seem to be premised on a motion to suppress evidence. But, as the cited discussion in the trial court demonstrates, there was no motion to suppress made at any time before the trial court.

The defendant's point on appeal presupposes: (1) that the objections made at trial were understood by the trial court as a motion to suppress evidence, (2) that the trial court, in overruling the objections, was exercising its discretion to permit an untimely motion to suppress, and (3) that defendant was surprised that the arresting officer would testify about his observations during and after the arrest and where the arrest occurred. None of these assumptions are supported by the record. The point asserted on appeal is not preserved. The record also fails to establish plain error.

### A.

Unlawful search and seizure claims must be raised by a motion to suppress evidence before trial. *Sec. 542.296.3; Rule 24.05.*[2] In a driving while intoxicated case, the lawfulness of the defendant's arrest is not

---

1. In his point the defendant makes mention of the best evidence rule, one of his evidentiary objections at trial. The best evidence rule is inapplicable, however. The best evidence rule applies only when the terms of the writing itself are in dispute, not simply when a witness with personal knowledge testifies concerning facts that also happen to be contained in a writing. *State v. Curry,* 473 S.W.2d 747, 748–49 (Mo.1971). In other words, the best evidence rule does not exclude evidence based on personal knowledge even if documents would have provided the same information. *Cooley v. Dir. of Revenue,* 896 S.W.2d 468, 470 (Mo. banc 1995). Such is the case here.

2. Rule 24.05 states: "Requests that evidence be suppressed shall be raised by motion before trial; however, the court may in its discretion entertain a motion to suppress evidence at any time during trial." The parts of section 542.296 relevant to this appeal are as follows:

   1. A person aggrieved by an unlawful seizure made by an officer and against whom there is a pending criminal proceeding growing out of the subject matter of the seizure may file a motion to suppress the use in evidence of the property or matter seized. . . .
   2. The motion to suppress shall be in writing. It shall be filed with the court in which there is pending against the moving party a criminal proceeding growing out of the subject matter of the seizure.
   3. The motion shall be made before the commencement of the trial of the moving party on the charge arising out of the seizure unless he was unaware of the grounds or had no opportunity to do so before the trial. In that event the motion may be made during the trial. However, the trial judge may in his discretion entertain a motion any time during trial.
   * * * *

   Arguably section 542.296 does not apply because it refers to 'property or matter seized' and not to the suppression of testimony. However, Rule 24.05 contains no such language. A pretrial motion to suppress, the subject of Rule 24.05, has repeatedly been used as the vehicle for attempts to suppress testimony or statements that are the product of an allegedly unlawful arrest. See, e.g., *State v. Carrico,* 696 S.W.2d 511 (Mo.App. 1985); *State v. Corpier,* 793 S.W.2d 430 (Mo. App.1990); *State v. Pfleiderer,* 8 S.W.3d 249 (Mo.App.1999); *State v. Morrow,* 996 S.W.2d 679 (Mo.App.1999); See also *State v. Clark,* 26 S.W.3d 448 (Mo.App.2000) (motion to suppress defendant's statements made without counsel present); *State v. McElroy,* 838 S.W.2d 43 (Mo.App.1992) (motion to suppress identification testimony).

an element of the offense. The lawfulness of the arrest is instead a collateral issue, one that does not bear upon guilt or punishment. *State v. Yowell,* 513 S.W.2d 397, 402 (Mo. banc 1974). One purpose of the requirement that unlawful search and seizure claims be made before trial is to avoid delays during trial in determining this issue. *State v. Harrington,* 435 S.W.2d 318, 321 (Mo.1968). Another reason for the requirement is so the basis of the claim of unlawful search or seizure will be known, giving the state a fair chance to respond and the trial court a fair opportunity to rule on the claim. *Id.* The rule helps to eliminate the possibility of sandbagging with respect to an issue not relating to guilt or punishment.

■■■ Until defendant requests, by motion to suppress, that testimony obtained incident to an arrest be excluded due to the unlawfulness of the arrest, the state is not obligated to prove the validity, or to use the defendant's more vague term, a "foundation" for the arrest. *State v. Conn,* 950 S.W.2d 535, 537 (Mo.App.1997). When a defendant complains for the first time during trial that evidence should not be admitted due to an officer's lack of authority to arrest, the defendant bears the burden of establishing the unlawfulness of the police conduct. In effect, the accused loses the benefit of the presumption at a hearing on a timely filed motion to suppress that all warrantless searches and seizures are invalid. *See State v. Villa-Perez,* 835 S.W.2d 897, 902 (Mo. banc 1992). Here, defendant failed to meet his burden to show that the arresting officer had no authority. As will be discussed below, he also did not establish any excuse for not asserting his claim by a timely pretrial motion.

■■■ It is clear that the mere admission or exclusion of evidence based on a rule of evidence does not have the substan-

tive effect of a ruling on a motion to suppress. *State v. Eisenhouer,* 40 S.W.3d 916, 919 (Mo. banc 2001). Objections to evidence based on evidentiary rules do not preserve a claim that a search or seizure was invalid. *State v. Anderson,* 698 S.W.2d 849, 851 (Mo. banc 1985). The trial court and the prosecutor had no reason to suppose that defendant was asserting a motion to suppress evidence of an unlawful arrest if for no other reason than that such relief was never directly requested. Although a trial court has discretion to entertain a motion to suppress at any time during the trial, Rule 24.05, it is not at all clear that such was the trial court's intent when it overruled the defendant's evidentiary objections. In any event, overruling the objections suggests that the trial court was declining to exercise the discretion to entertain a motion to suppress in the midst of trial.

■■■ Another reason why the objections to admissibility do not have the earmarks of a motion to suppress is because a motion to suppress is rooted in a violation of an accused's constitutional right to be free from unreasonable searches and seizures. *U.S. Const. Amend. IV; Mo. Const. art. I, sec. 15.* Defense counsel never made an objection that any evidence was obtained in violation of his constitutional rights, a claim that must be raised at the earliest opportunity. *State v. Hadley,* 815 S.W.2d 422, 425 (Mo. banc 1991). Neither in the trial court nor in his point on appeal does defendant assert a Fourth Amendment violation. As a result, the claim that evidence was obtained in violation of defendant's constitutional right to be free from unlawful arrest is not preserved for review.

### B.

■■■ Even if one strains to find that a motion to suppress, of some sort, was

made at trial, defendant's argument fails to establish that his claim is preserved for appeal because the record does not show that his motion was made prior to trial or that an excuse exists for failing to move to suppress prior to trial. If evidence is otherwise competent and relevant, the trial court will not pause during trial to determine if the evidence was obtained by an unconstitutional search or seizure unless the defendant has made a motion to suppress such evidence prior to trial. *State v. Odom*, 353 S.W.2d 708, 712 (Mo.1962). And otherwise the officer's firsthand observations of defendant's intoxicated condition at the time of the arrest is both competent and relevant to the charge of driving while intoxicated. *State v. Britton*, 444 S.W.2d 465 (Mo.1969).

█ The only recognized exception to the requirement of a pre-trial motion, and the only one raised here by defendant, is where the defendant had no reason to anticipate that the unlawfully seized evidence would be introduced and was surprised by its introduction. *State v. Jackson*, 477 S.W.2d 47 (Mo.1972).[3] In *State v. Edmondson*, 379 S.W.2d 486 (Mo.1964), the officers' search of the defendant's car without a warrant disclosed an inculpatory slip of paper. The defendant, on trial for robbery, had no reason to know that the police possessed the slip of paper until it was offered in evidence at trial. *Id.* at 489. In that case, because the record showed that the accused did not know the evidence in question had been seized, the lack of a pre-trial motion to suppress was excused and the Court considered the claim on appeal.

█ The evidence alleged to be unlawfully obtained in this case is the testimony by the arresting officer of the defendant's intoxicated condition at the time of and immediately following the arrest. It cannot seriously be argued that defendant did not reasonably anticipate that the arresting officer would testify about the place of the arrest and defendant's condition at the time of the arrest. The officer was the only witness endorsed on the information and on that document was identified as a police officer for Lake Ozark. The information described the intersection where defendant was first observed driving. Since defense counsel referred to the officer's arrest report from the outset of cross-examination, the defendant was undoubtedly aware of even more detail about the officer's testimony than was disclosed in the information. Certainly defense counsel made no claim before the trial court that he did not anticipate that the arresting officer would be called to testify regarding defendant's drunken condition while driving and about the place where the arrest occurred, and he makes no such claim here.

█ Instead, defendant's claim is that he was surprised that the state did not prove the lawfulness of the arrest by direct proof of the mutual aid contract between Lake Ozark and Lakeview. But in the absence of a pre-trial motion to suppress, the state has no duty at trial to prove the arrest was valid. If anyone was surprised by the need for such proof, it was surely the prosecutor. He was being asked by defense counsel to lay a foundation for a lawful arrest when the issue of the lawfulness of the arrest had never before been questioned.

**3.** In 1979, this Court adopted Rules 25.03 and 25.04, providing for pretrial disclosure of evidence by the state to criminal defendants. Perhaps because of the adoption of these rules, no court of this state has since found that surprise excused a pre-trial motion to suppress. The defendant requested disclosure of evidence by the state pursuant to this rule in this case, and he makes no claim that the state withheld evidence.

■ It is not an accurate statement of the exception to say that surprise results, excusing a pre-trial motion to suppress, when the accused fails to anticipate evidence *not* produced at trial showing a lawful search or seizure. If that were the exception, the state would always be required to prove the lawfulness of a search or seizure at trial before offering evidence obtained during an arrest or search, even in the absence of any pre-trial motion to suppress. Whenever proof of a lawful arrest is not presented at trial, the defendant could claim surprise and the rule and statute requiring a pre-trial motion to suppress would become dead letters. That is simply not the law.

Even assuming the defendant expected the prosecutor to prove the lawfulness of the arrest by direct proof of the mutual aid contract at trial, his claim of surprise so as to eliminate the need for a pre-trial motion is not credible. Based on the facts clearly communicated to defendant by way of the information and pre-trial disclosure, he knew or should have known that the officer was employed by the City of Lake Ozark. And defendant certainly knew the location of his arrest—Lakeview. That knowledge, coupled with even a rudimentary pre-trial investigation of the Lakeview or Lake Ozark city records, would have disclosed all that was necessary to negate any credible claim of surprise so as to excuse filing of a pretrial motion to suppress. At minimum, some plausible cause explaining the failure to make a timely pre-trial motion to suppress must appear in the record for the claim to be preserved on appeal. No such explanation is apparent here.

### C.

■ The assertion that the arrest was unlawful was not preserved for review. Examining the point for plain error, the claim still fails. In reviewing preserved error relating to a trial court's order on a motion to suppress evidence, the facts and reasonable inferences from such facts are considered favorably to the trial court's ruling and contrary evidence and inferences are disregarded. *State v. Kinkead,* 983 S.W.2d 518, 519 (Mo. banc 1998). To qualify for plain error relief on appeal, the standard is even higher—the record must show that the error "so substantially affects the rights of the defendant that a manifest injustice or miscarriage of justice results." Rule 30.20; *State v. Isa,* 850 S.W.2d 876, 884 (Mo. banc 1993).

■ Viewing the evidence favorably to the trial court's ruling, on the evening in question, in reliance on instructions given by his supervisor, the officer was on patrol in Lakeview pursuant to a mutual aid agreement between Lakeview and Lake Ozark. One reasonable inference from these facts is that the officer had the power to act as a police officer in Lakeview, which includes the power to make arrests.

Notwithstanding the rule that reasonable inferences favorable to the trial court's ruling are indulged and contrary inferences disregarded, the defendant argues that other inferences are possible. Specifically, that the mutual aid agreement may have authorized investigative services but not arrest powers. This inference is not plausible, however. Cities are undoubtedly sensitive to their liability for countenancing unlawful arrests both by their own police in neighboring communities and by police of other cities who patrol their streets. Cities are also surely sensitive to public safety risks inherent in putting armed, uniformed police of one city on patrol in another community without the power to make arrests or enforce laws. For these common sense reasons, it is unlikely that a police officer would be instructed to patrol the streets of an adjoin-

ing city pursuant to a mutual aid agreement without also having authority to make arrests.

■ The defendant bears the burden of showing plain error. *State v. Fowler,* 938 S.W.2d 894, 898 (Mo. banc 1997). In this case, he also bears the burden of establishing that his arrest is unlawful. Every indication is that the officer was acting in good faith reliance on the instructions of his superiors. *See State v. Brown,* 708 S.W.2d 140, 145 (Mo. banc 1986). Police officers routinely rely on secondary sources, such as instructions from supervisors, training, and even posted city limit signs, to establish the bounds of their authority. Such information is not inherently unreliable. The record falls far short of establishing the sort of compelling evidence of egregious police misconduct to constitute a manifest injustice under plain error analysis.

### III.

The judgment is affirmed.

LIMBAUGH, C.J., WOLFF, BENTON and PRICE, JJ., and GARY M. GAERTNER, Sp.J., concur.

WHITE, J., dissents in separate opinion filed.

LAURA DENVIR STITH, J., not participating.

RONNIE L. WHITE, Judge, dissenting.

Missouri courts have, for at least a century, narrowly circumscribed the authority of municipal officers to make warrantless arrests. Our courts have long seen these arrests as particularly threatening to the personal liberty, and even the personal safety, of Missourians. The principal opinion at best ignores, and in my view seriously undermines, this jurisprudence by justifying a facially illegal arrest with no more than speculation regarding what the arresting officer must have thought his authority was. Although the complete absence of competent evidence that the arrest here was subject to lawful authority borders on the kind of manifest injustice for which plain error relief is available, such relief is unnecessary because the record unambiguously shows that this claim of error was preserved for appeal. Accordingly, with respect, I dissent.

## I. Extraterritorial Arrests by Municipal Officers are Illegal

In Missouri, it has long been established that municipal law enforcement officials have only those powers conferred upon them by statute.[1] Statutes granting these officers the power to arrest without a warrant, a power traditionally viewed as "being in derogation of liberty," have been strictly construed.[2] One result of narrowly circumscribing the authority of municipal officers has been to geographically limit the areas in which these officers may lawfully operate. Specifically, warrantless arrests made by municipal officers outside the boundaries of their municipality are—in the absence of some express statutory exception—illegal.[3]

This rule is designed to protect fundamental liberties:

> Perhaps the most important reason why a state might limit the jurisdiction of city and town officers to their respective

---

1. *See State v. Holcomb,* 86 Mo. 371 (1885).

2. *Rodgers v. Schroeder,* 220 Mo.App. 575, 287 S.W. 861, 862 (1926).

3. *Kimber v. Director of Revenue,* 817 S.W.2d 627, 631 (Mo.App.1991); *City of Fredericktown v. Bell,* 761 S.W.2d 715, 716–17 (Mo. App.1989); *City of Advance v. Maryland Cas. Co.,* 302 S.W.2d 28, 31–32 (Mo.1957); *Rodgers,* 287 S.W. at 862–64.

communities is that smaller communities are unlikely to have the resources to provide their officers with proper training in the elements of probable cause or arrest procedures. By limiting an officer's jurisdiction to the community in which she serves, a state helps to ensure not only that the power of the police over individuals will be appropriately restricted, but also that an officer·will be sufficiently trained for the types of arrests likely to occur in her community. This type of restriction helps to protect the very interests underlying the Fourth Amendment, those of the individual in privacy and personal freedom, and, at the same time, balances the interests of government in protecting society and making arrests in a safe, efficient and constitutional manner.[4]

A review of the cases in which warrantless arrests by municipal officers have been an issue also suggests that such arrests frequently occasion violent confrontations,[5] and may, for protection of the arrestees, the public and the officers themselves, best be handled by officers with additional training and experience, or at least officers who are familiar with local conditions. The restriction also serves an interest in local accountability, since residents of a municipality who feel that local officers have failed to perform their duties have recourse to the democratic process to control these officials. Residents outside a

municipality have no ability (other than through the state legislature) to control the behavior of officers who venture outside their jurisdiction. The rule that extrajurisdictional arrests by municipal officials are generally illegal is grounded in serious concerns regarding liberty, public safety and democratic accountability, and should not—in the absence of a specific legislative authorization—be disturbed.

For an officer of a fourth class city, such as the officer here, three possible exceptions to the rule against extraterritorial arrests are readily apparent. First, such an officer may make an arrest on city owned or leased property outside the bounds of his or her municipality;[6] no party has suggested that this exception is relevant here. Second, certain officers are authorized to make arrests outside their jurisdictions under the "fresh pursuit" statute, § 544.157, RSMo, but the record here contains neither evidence nor any claim that the conditions of that statute have been met. Finally, there is the authority provided by § 70.815.2, RSMo:

> The governing body of any political subdivision may by ordinance, order or other ruling enter into a contract or agreement with any other political subdivision ... for the provision of police services by one political subdivision to another on request. The scope of the agreement may be general or specific, and may or

---

**4.** *Abbott v. City of Crocker,* 30 F.3d 994, 1000 (8th Cir.1994) (Arnold, R., C.J., concurring in part and dissenting in part).

**5.** *See, e.g., id.* at 996 (City of Crocker police officer alleged to have struck arrestee four times in the face with his flashlight after chasing him outside city limits to make concededly illegal arrest); *State v. Goodman,* 449 S.W.2d 656, 658 (Mo.1970) (town marshal, driving an unmarked car, out of uniform and carrying no badge, together with his nonofficer associate, stopped at gunpoint and frisked defendants outside city limits, even

though marshal conceded he had not seen them breaking any laws or had no information indicating that these were the suspects he was looking for); *Hacker v. City of Potosi,* 340 S.W.2d 166, 168–69 (Mo.App.1960) (officer chasing speeding driver to house outside city limits shot while attempting arrest); *State ex rel. Kaercher v. Roth,* 330 Mo. 105, 49 S.W.2d 109 (1932) (passenger in car driven by fleeing misdemeanant shot in lung by constable attempting to effect arrest outside city limits).

**6.** §§ 85.610, 85.620, RSMo 2000.

may not provide for compensation for such services. Officers providing police services in another jurisdiction pursuant to such an agreement shall have the same powers of arrest as officers of the requesting political subdivision, and shall have the same immunity as if acting within their own jurisdiction.

The principal opinion's unsupported conclusion that Officer Patrick had authority to make warrantless arrests in Lakeview village if such an agreement existed is speculative, at best, since the statute gives an officer acting under an agreement only those arrest powers a local officer would have, and this Court has long held that the statutes under which village police officers operate do not authorize warrantless arrests.[7] In any case, the question is not presented here, since, contrary to the principal opinion's suggestion, the trial court never received evidence of any agreement between Lake Ozark and Lakeview.

The principal opinion says that "the police officer testified that on the evening in question, in reliance on instructions given by his supervisor, he was on patrol in Lakeview pursuant to a mutual aid agreement between Lakeview and Lake Ozark." This is a misleading characterization, at best, of the officer's actual testimony. Officer Patrick never testified that he was "on patrol" anywhere on June 21, 1998, and never testified that anyone instructed him to patrol in Lakeview that night.[8] More importantly, Officer Patrick never

connected his authority to operate in Lakeview to the purported agreement.

The only testimony regarding the agreement was Officer Patrick's "Yes" when asked if he believed that Lake Ozark "had a mutual aid contract" with Lakeview.[9] However, the trial court *sustained* the defense's objection to this question, ruling that the officer could not testify as to the existence of the agreement, but also ruling that if the State proved the officer's "duties" and what he was "directed to supervise," then the court would permit the State to forego proof of such an agreement. Thus, the trial court refused to receive Officer Patrick's testimony as evidence of the existence of this agreement and, more importantly, the State abandoned any attempt to prove the terms of the purported agreement or to connect Patrick's presence in Lakeview to any authority whatsoever. The only testimony the trial court permitted touching even remotely on Officer Patrick's authority to conduct arrests outside Lake Ozark was that, based upon his education and experience, his "area of operation" included Lake Ozark and Lakeview.

In my view, this is an insufficient basis from which to conclude, as the principal opinion does, that Officer Patrick had a good faith belief that he was entitled to make warrantless arrests in Lakeview (not least because he never testified that he believed he had authority to make such arrests). More importantly, the implicit suggestion that an officer's good faith be-

---

**7.** *See* §§ 80.410, 80.420; *State v. Holcomb,* 86 Mo. 371, 381 (1885).

**8.** The Officer testified that his "area of operation" on that date was "City of Lake Ozark Police Department." He said he received a radio call that a car was driving erratically, and that he eventually made contact with the car in Lakeview. Later he testified that, based upon his education and experience, his (or possibly the department's) area of opera-

tion was Lake Ozark, Lakeview and Lakeside. "Area of operation" was the prosecutor's term, and neither he nor the witness provided any elaboration of what the term was supposed to mean.

**9.** Patrick did later testify that he had never seen any such agreement, and that all his knowledge regarding his "area of operations" was based upon what he was told by others.

lief that he had authority to make an arrest suffices to make the arrest legal is both unwarranted and unwise. An officer's authority to make arrests in this situation depends entirely on statutory authority and official acts by government bodies. The officer's state of mind is simply not relevant to these considerations. Where, as here, a police officer admits making an arrest that is *prima facie* illegal, I would require some specific, competent evidence to overcome the presumption of illegality before evidence gathered in the course of the arrest can be used in a criminal prosecution. The use of such evidence in the absence of any substantial demonstration of authority approaches a manifest injustice.

## II. Defendant Did Not Waive His Right to Challenge the Legality of His ⊙ Arrest

Since the record, in my view, demonstrates that appellant preserved this issue for appeal, plain error relief is unnecessary. The principal opinion's contention that appellant failed to preserve his challenge to the legality of his arrest is based upon a misreading of the record, as well as a misapplication of the law. The statute the principal opinion relies on regarding motions to suppress does not apply to this case, and this Court's rule regarding motions to suppress, which is controlling, permits the trial court to entertain motions to suppress during trial, as the trial court here straightforwardly did.

The principal opinion treats section 542.296, RSMo, and Rule 24.05 as if they were interchangeable, which they self-evidently are not. The statutory provision defines a motion to suppress as a motion by a criminal defendant "to suppress the use in evidence of the property or matter seized" illegally. Defined this narrowly, the principal opinion is correct that defendant did not file a motion to suppress; but defendant was not seeking to have evidence of any illegally seized "property or matter" suppressed. The principal opinion (grudgingly) concedes that the statute has no application here,[10] but nevertheless continues to rely on the terms of the statute as if they were identical to the rule. Only the statute contains the requirements that a motion to suppress (as defined in the statute) be made in writing and be made before commencement of the trial unless the defendant was unaware of the grounds for the motion.

This Court's rule regarding motions to suppress contains neither of these restrictions and, since it is a procedural rule, would control over the statute, even if the statute purported to apply to this case. Rule 24.05 says simply that: "Requests that evidence be suppressed shall be raised by motion before trial; however, the court may in its discretion entertain a motion to suppress evidence at any time during trial." The principal opinion misstates the law when it suggests that "the lone exception to a pre-trial motion is where the defendant had no reason to anticipate that the unlawfully seized evidence would be introduced and was surprised by its introduction." While this is an arguable construction of the statute, the lone exception to Rule 24.05 is when "the court . . . in its discretion entertain[s][the] motion . . . during trial."

Defendant's request was that evidence of his arrest be suppressed because the

---

10. The principal opinion qualifies this concession with the word "arguably," but I do not understand the principal opinion to seriously maintain (as it would have to for the statute to apply) that the defendant himself was "property or matter" illegally seized in the course of the arrest.

arrest was illegal.[11] Under the rule, the court undoubtedly had discretion to deny the request based upon its untimeliness. The court, however, did not do that. Instead, it exercised its discretion to consider the request and to overrule it. If the court was rejecting the motion because it was untimely, there would have been no need to require the State to lay the foundation that its witness was authorized to make extrajurisdictional arrests, as the trial court required. That the trial court could have rejected the motion as untimely does not mean that this Court may treat as unpreserved allegations of error arising from rulings that the trial court did, in fact, undertake to decide, particularly where, as here, the court was acting within its explicit discretion to decide these matters during trial.

Recognizing, perhaps, that the record refutes the notion that defendant never moved to have the evidence of his arrest excluded and that the trial court never exercised its discretion to overrule the motion, the principal opinion offers the alternative theory that defendant did move for the exclusion of this evidence, but that he failed to meet his burden of proof on the motion. This theory, however, rests on the misconception that "the accused loses the benefit of the presumption at a hearing on a timely filed motion to suppress that all warrantless seizures are illegal." It is particularly puzzling that the principal opinion relies on *State v.. Villa–Perez* as the sole authority for this proposition, since that case, which involved a motion to suppress at trial, holds the opposite: the accused "has the burden of establishing that his constitutional rights were violated by the challenged search or seizure, however the burden is on the State to justify a warrantless search and to demonstrate that such falls within an exception to the warrant requirement...." [12] *Villa–Perez* holds, as I would hold here, that the initial burden on a motion to suppress made at trial is on the defendant to show that the arrest was *prima facie* illegal,[13] but the burden then shifts to the State to show the presence of an exception.

In this case, defendant met his burden of showing that the arrest was illegal on its face, since the officer admitted he made the arrest outside his jurisdiction. The burden then shifted to the State to show an exception to the general rule prohibiting such arrests. The principal opinion's holding that the defendant was required to disprove all possible exceptions to the rule against extrajurisdictional arrests is neither logically nor practically feasible. The

11. The principal opinion's suggestion that defendant did not make a motion to suppress because he did not refer to the Fourth Amendment is misguided. The right to be free from extraterritorial arrests by municipal officers long predates the application of the Fourth Amendment to the States, and in fact arises from Missouri, not federal law. As the Eighth Circuit has held specifically with regard to this doctrine, an extrajurisdictional arrest that is illegal under state law is not automatically a Fourth Amendment violation. *Abbott v. City of Crocker*, 30 F.3d 994, 997–98 (8th Cir.1994). It would have been contrary to the law of this circuit for defendant to claim, as the principal opinion suggests he would have had to make a motion to suppress, that the seizure was a violation of the

federal constitution. Contrary to the principal opinion's insinuation, it is not inconceivable that Missouri law might provide slightly more freedom from illegal arrests than the bare minimum the federal constitution mandates.

12. 835 S.W.2d 897, 902 (quoting *State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990)).

13. This is a higher burden than the defendant bears at a pre-trial motion to suppress hearing, where the State bears both the initial burden of going forward and the ultimate burden of persuasion. § 542.296.6, RSMo.

number of possible factual exceptions to the rule is not small. Perhaps the arrest was made on Lake Ozark owned or leased property; perhaps Officer Patrick was engaged in fresh pursuit or had a warrant for Mr. Galazin's arrest; perhaps Officer Patrick saw Mr. Galazin commit a felony; perhaps Officer Patrick was also a State law enforcement officer, or a county law enforcement officer, or a State conservation agent, or some other State or federal officer entitled to make arrests in Lakeview. It can not be the case that defendant was required to disprove all of these theories and scores of other imaginable scenarios in order to meet his burden of demonstrating that his arrest was illegal.

### III. Further Proceedings

The principal opinion does at least provide an opportunity to reach the merits of Mr. Galazin's arrest. If it is the case, as the majority holds, that defendant's failure to make his motion before trial amounted to a waiver of his ability to challenge the legality of his arrest, and if it was, as the majority also holds, apparent that a routine investigation would have revealed that grounds for this challenge existed at the time a motion could have been made, then I see no reason why effective counsel would not have raised this issue in a pre-trial motion. To the extent that the substantive claim that his arrest was illegal is meritorious, Mr. Galazin has, under the majority's analysis, a powerful argument that his conviction should be overturned on grounds of ineffective assistance of counsel.

Since, however, I see no procedural bar to reaching the merits of this claim in this proceeding, I would avoid collateral litigation and reverse and remand this cause for a new trial.

