STATE of Missouri, Respondent,

v.

Thomas R. GOTTSMAN, Appellant.

No. WD 42600.

Missouri Court of Appeals,
Western District.

July 31, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 2, 1990.

Roy W. Brown, Bruce B. Brown, Kearney, Milt Harper, Columbia, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before TURNAGE, P.J., and MANFORD and BERREY, JJ.

TURNAGE, Presiding Judge.

Thomas Gottsman was convicted by a jury of two counts of unlawful use of weapons, § 571.030.1(4), RSMo 1986,[1] three counts of felonious restraint, § 565.120, and three counts of armed criminal action, § 571.015.[2] In accordance with the jury's verdict the court sentenced Gottsman to thirty days on each of the unlawful use of weapons counts to run concurrent, one year on each of the felonious restraint counts to run concurrent, and three years on each of the armed criminal action counts to run concurrent, but consecutive to the other sentences. Thus, the effective sentence was a total of four years.

Gottsman appeals only from the felonious restraint and armed criminal action convictions. He contends the evidence was insufficient to support a conviction for felonious restraint and that he could not be convicted of felonious restraint and unlawful use of weapons because double jeopardy forbids conviction of two crimes based on the same conduct. Affirmed.

In September of 1988, Brenda Berger, an investigator for the Division of Family Services, received a report of alleged child abuse on a daughter of Gottsman. Berger decided to go to the Gottsman residence to investigate and requested the sheriff's office to provide escorts for her. She met Sergeant Lacey and Deputy Wilson and the three proceeded in their individual cars to

1. All sectional references are to RSMo 1986.

2. The armed criminal action counts utilized the felonious restraint as the underlying felony.

the Gottsman residence which was in a rural area.

On arriving at the Gottsman home Berger and the officers identified themselves. Berger talked with Gottsman's wife and Gottsman stood nearby for a while before going into the house. A short time later Gottsman emerged from the house carrying a shotgun in his hands and a pistol in a shoulder holster. As Gottsman approached the three he began working the action of the shotgun while yelling and screaming obscenities. The officers took Berger and crouched behind a car while Gottsman continued to walk around yelling and screaming obscenities. Gottsman tried to confront the three but they managed to keep a car between themselves and him. Gottsman said that "somebody was going to die before this was all over" and that "nobody was leaving until somebody was dead" several times.

The Gottsman's home was located at the end of a drive which crossed a dam. It was impossible for the three people to drive their cars away because Gottsman was walking on and near the dam and the three did not want to drive by him for fear of being shot. There was no way to avoid the dam because of the water on one side and a deep ravine on the other.

After Gottsman came out with the gun and shouted obscenities and threats, one of the officers was able to reach into his car and call for help. Shortly thereafter more officers arrived but stayed on the other side of the dam from the Gottsman house. At one point Gottsman walked almost across the dam and spoke with a sheriff's deputy.

Gottsman continued to walk around for some time before his wife was able to talk with him briefly and get the shotgun. After giving up the shotgun Gottsman continued to walk around shouting threats and obscenities while waving his pistol. Gottsman refused to allow the three to leave despite their assurance that Berger had obtained the information she needed. After about two hours it began to get dark and the officers managed to shine lights on Gottsman. When he retreated to get out of the light the three were able to get into their cars and leave.

■ Gottsman first contends the evidence was insufficient to support the conviction for felonious restraint because, (1) there was no evidence the guns were loaded, (2) Gottsman did not specifically threaten the officers with harm, and (3) Gottsman did not point a gun at them or act as if he were going to fire a gun in their direction. Felonious restraint is defined in § 565.120.1 as follows:

1. A person commits the crime of felonious restraint if he knowingly restrains another unlawfully and without consent so as to interfere substantially with his liberty and exposes him to a substantial risk of serious physical injury.

There is no dispute in the facts. Gottsman admits that he walked around yelling obscenities and threats while carrying a shotgun and a pistol and refused to allow the three to leave. Gottsman's complaint that the evidence was insufficient is not well taken because the statute does not require that the restraint be accomplished through the use of a firearm. In State v. Terrell, 751 S.W.2d 394, 396[3, 4] (Mo.App. 1988), the court held that the use of a dangerous instrument is not required to prove felonious restraint. Thus, the State was not required to prove that the guns Gottsman carried were loaded or that he pointed the guns at any of the three or that he specifically threatened any of the three by name or that he acted as if he were going to fire a gun at any of the three. In State v. Carroll, 755 S.W.2d 322 (Mo.App. 1988), Carroll only partially displayed a pistol and later accomplished the felonious restraint by use of threats. The court held that the restraint accomplished by the threat of the injury from a weapon was sufficient. Id. at 323–324.

Here, Gottsman admits that he restrained the three from leaving. He only contends that there was no risk of serious physical injury. However, the jury could have found that, by waving the guns around and saying that somebody was going to die, Gottsman placed the three in substantial risk of injury. Each of the

three testified that they felt in danger and the facts leave no doubt that the three were in a situation which created a substantial risk of serious physical injury.

■ Gottsman next contends that the conviction of felonious restraint cannot stand because Gottsman was placed in double jeopardy by being convicted of unlawful use of weapons and felonious restraint by use of the same evidence. In his argument Gottsman cites cases involving single prosecution and those involving successive prosecution without drawing any distinction between the two. This is a distinction which must be made to properly apply the protection of the Double Jeopardy Clause.

■ Obviously this is a single prosecution case.[3] In *Jones v. Thomas*, 491 U.S. 376, ——, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322, 331 (1989), a single prosecution case, the court stated that in a multiple punishment context, that is punishing the same conduct under more than one crime, the interest which the Double Jeopardy Clause of the Fifth Amendment of the U.S. Constitution seeks to protect is "limited to ensuring that the total punishment did not exceed that authorized by the legislature."[4] In *Missouri v. Hunter*, 459 U.S. 359, 365, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983), the court stated:

> The Double Jeopardy Clause is cast explicitly in terms of "twice put in jeopardy." We have consistently interpreted it " 'to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.' " *Burks v. United States*, 437 U.S. 1, 11, 57 L.Ed.2d 1, 98 S.Ct. 2141, 2147 (1978).

The court noted that Hunter had been subjected to only one trial so the question was not one of his right to be free from multiple trials but involved the question of multiple punishment for the same offense. On that question the court stated:

> With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.

459 U.S. at 366, 103 S.Ct. at 678.

The court pointed out that simply because two criminal statutes may proscribe the same conduct does not mean that the Double Jeopardy Clause precludes imposition in a single trial of cumulative punishments. The reason given by the court was that "[l]egislatures, not courts, prescribe the scope of punishment." *Id.* at 368, 103 S.Ct. at 679. The court concluded in *Hunter* that when a legislature specifically authorized cumulative punishment under two statutes, even when the two statutes prohibit the same conduct, cumulative punishment may be imposed in a single trial if the legislature has made it clear that it intended the sentences to be cumulative. *Id.* at 368–369.

In this case Gottsman could be prosecuted and punished for both unlawful use of weapons and felonious restraint arising from the same conduct if the legislature has provided for cumulative sentences. *State v. Cornman*, 695 S.W.2d 443, 449(8) (Mo. banc 1985).

The two statutes are silent as to whether or not cumulative punishments are intended in the event the same conduct is found to violate both statutes. The legislature has adopted § 556.041 to provide the answer. That section reads:

> **Limitation on conviction for multiple offenses.**—When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if
>
> (1) One offense is included in the other, as defined in section 556.046; or

---

**3.** Thus, reliance by Gottsman on *Grady v. Corbin* —— U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), is misplaced because that case involved a successive trial.

**4.** The Double Jeopardy Clause of the Missouri Constitution, Art. I § 19 is not implicated because it has been construed to apply only after an acquittal of the defendant. *State ex rel. Bulloch v. Seier*, 771 S.W.2d 71, 72 n. 2 (Mo. banc 1989).

(2) Inconsistent findings of fact are required to establish the commission of the offenses; or

(3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or

(4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

Under § 556.041 the first question to consider in determining whether cumulative punishments may be assessed is whether unlawful use of weapons is included in felonious restraint, or vice versa, as defined in § 556.046. Under that section an offense is included when:

(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(2) It is specifically denominated by statute as a lesser degree of the offense charged; or

(3) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein.

Unlawful use of weapons is defined in § 571.030.1(4) as follows:

1. A person commits the crime of unlawful use of weapons if he knowingly:

\*     \*     \*     \*     \*     \*

(4) Exhibits, in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner.

In *State v. McLemore,* 782 S.W.2d 127, 128[2] (Mo.App.1989), the court held that § 556.041 must be construed by focusing on the statutory elements of each offense rather than upon the evidence adduced at trial. Following the test required by *McLemore,* the sections proscribing unlawful use of weapons and felonious restraint must be examined for their statutory elements to determine if one is established by proof of the same or less than all of the elements required to establish the other. There are no common statutory elements in such statutes, thus neither of these offenses is included in the other. The other two subsections of § 556.046 have no applicability in this case.

The second subsection of § 556.041 does not apply because there were no inconsistent findings of fact required to establish the two offenses. Subsection 3 has no applicability because one does not prohibit conduct generally while the other prohibits it specifically. Subsection 4 is also inapplicable because neither offense is defined as being a continuous course of conduct.

Gottsman could be prosecuted and punished for both felonious restraint and unlawful use of weapons arising from the same conduct because § 556.041 allows Gottsman to be prosecuted for both offenses. Under *Jones* and *Hunter* the punishment imposed did not exceed that authorized by the legislature. Therefore Gottsman suffered no violation of his rights under the Double Jeopardy Clause.[5]

The judgment is affirmed.

All concur.

---

**5.** This case may be perceived to be contrary to *State v. King,* 748 S.W.2d 47 (Mo.App.1988). *King* involved prosecution in a single trial for unlawful use of weapons and armed criminal action based on the same conduct. In *King* the court quoted cases decided in Missouri prior to *Hunter* which appear to contain language contrary to *Hunter.* Some of these cases involved successive prosecutions and are thus not contrary to *Hunter.* In any event the court reached the right result because as explained at 50 n. 1, unlawful use of weapons was excepted from armed criminal action when that statute was passed. Section 571.015(4). Thus, the legislature had not prescribed cumulative punishment for unlawful use of weapons and armed criminal action.