**STATE of Missouri, Appellant,**

v.

**James TAYLOR, Respondent.**

**No. ED 82596.**

Missouri Court of Appeals,
Eastern District,
Division Two.

June 24, 2003.

Wendy Wexler Horn, Prosecuting Attorney, Patrick L. King, Assistant Prosecuting Attorney, Farmington, MO, for appellant.

James P. Feely, Jr., Assistant Public Defender, St. Louis, MO, for respondent.

GARY M. GAERTNER, SR., Judge.

Appellant, State of Missouri ("state"), appeals the order of the Circuit Court of St. Francois County granting respondent's, James Taylor ("defendant"), motion to suppress statements. We affirm.

On June 22, 2002, Officer Jesse Boyer was sent to the Farmington Water Park in reference to a vehicle that had been broken into. Melinda Kukuligan and Kimberly Smith ("victims") told Officer Boyer that they had opened their trunk upon returning to their vehicle at the water park and discovered that their purses had been stolen.

On June 26, 2002, Detective Sergeant Jeff Crites ("Det. Sgt. Crites") and Detective Christopher James ("Det. James") went to the Wal–Mart Supercenter upon information that one of the victim's credit cards had recently been used there. The detectives viewed a surveillance video tape that showed an African–American male, who was wearing a green and white flowered shirt, and an African–American female purchasing items with the victim's credit card.

On June 27, 2002, a Wal–Mart employee, advised Det. Sgt. Crites and Det. James that the suspects were once again at the store. Subsequently, the employee informed the detectives that the suspects had just left the store in a white Dodge Caravan and were at the gas station across the parking lot from the store. Det. Sgt. Crites and Det. James drove by the driver's side of the vehicle at the gas station, and observed an African–American male in the driver's seat wearing the same type of flowered shirt as they had observed on the surveillance video tape the previous day. Det. James and Det. Sgt. Crites contacted Officer Eric Spiker and told him that the license plate on the Dodge Caravan was registered to a 1992 Oldsmobile. They then told Officer Spiker to pull the vehicle

over. Officer Spiker stopped the vehicle for a license plate violation.

Det. James and Det. Sgt. Crites were at the scene when Officer Spiker pulled the vehicle over. Det. James first approached April Chambers ("Chambers"), the female passenger of the vehicle. Upon being subjected to questioning, Chambers told Det. James that defendant, who was the driver of the vehicle, had stolen the victims' purses.

After speaking with Chambers, Det. James next approached defendant, who was uncuffed and standing by Det. Sgt. Crites on the driver's side of the vehicle, and told defendant that he had observed him on a surveillance video tape using the victim's credit card. Detective James then asked defendant how he came into possession of the card and defendant stated, "it doesn't matter what I say 'cause I'm fucked." Det. James then asked defendant why he broke into the victims' vehicle, and defendant stated, "times are tough." At that point, defendant was placed under arrest and transported back to the Farmington Police Department. After being advised of his *Miranda* rights, defendant refused to respond to any further questioning.

Defendant was charged with two counts of tampering in the first degree, section 569.080, RSMo 2000,[1] stealing, section 570.030, and fraudulent use of a credit device, section 570.130. Defendant filed a motion to suppress statements. A hearing before the trial court was held for the motion to suppress. Officer Spiker and Det. James testified at the hearing. The trial court suppressed the statements made by defendant to Det. James. The state appeals the order of the trial court.

█ In its sole point on appeal, the state claims that the trial court erred in granting defendant's motion to suppress the statements of defendant. The state argues that defendant's *Miranda* rights were not violated, because defendant was not in custody when he was interrogated.

█ When reviewing a trial court's ruling on a motion to suppress, we are limited to determining whether the evidence is sufficient to support the trial court's order. *State v. Brown,* 18 S.W.3d 482, 484 (Mo.App. E.D.2000). In doing so, we view all facts and reasonable inferences in favor of the trial court's ruling. *State v. Dye,* 946 S.W.2d 783, 786 (Mo.App. E.D. 1997). The challenged ruling of the trial court will not be disturbed absent manifest error. *Id.*

█ A criminal suspect is entitled to *Miranda* warnings, consistent with their Fifth Amendment right against self-incrimination, once the suspect is subjected to a "custodial interrogation." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In *State v. Werner,* 9 S.W.3d 590, 595 (Mo.banc 2000), citing *United States v. Griffin,* 922 F.2d 1343, 1349 (8th Cir.1990), the Missouri supreme court listed six factors to take into consideration when determining custody: (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced with official requests to answer questions; (4) whether strong-arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police domi-

---

1. All statutory references are to RSMo 2000, unless otherwise stated.

nated; or, (6) whether the suspect was placed under arrest at the termination of questioning. *Werner*, 9 S.W.3d at 595, citing *Griffin*, 922 F.2d at 1349. Determination of custody is not limited to applying these factors, but their presence and absence guide courts in assessing the totality of the circumstances surrounding interrogations. *Werner*, 9 S.W.3d at 596.

The first *Griffin* factor weighs in favor of defendant here. As the state's brief concedes, there is no evidence that the police told defendant he was free to leave when he desired, that questioning was voluntary, or that he was not under arrest.

The second *Griffin* factor weighs in favor of defendant. Even though defendant was not handcuffed, he did not possess unrestrained freedom of movement. The likely effect on a suspect of being placed under guard during questioning is comparable with the restraints of an arrest and tends to support the existence of custody. *Id.* Det. James testified at the suppression hearing that Det. Sgt. Crites was standing by defendant on the driver's side while Det. James was talking to Chambers. Officer Striker testified at the suppression hearing that he was watching defendant while Det. James was talking to Chambers and that defendant was not free to leave at any time after the vehicle was pulled over. Det. James testified at the suppression hearing that defendant was not free to leave during questioning and would have been stopped if he tried to leave. Based on this testimony and the conduct of the police officers, we infer that defendant had reason to believe that his freedom of movement was limited during questioning.

The third *Griffin* factor weighs in favor of defendant. The record clearly shows that defendant did not initiate contact with authorities. Based on the circumstances of this case, we find that defendant did not voluntarily acquiesce to an official request to answer questions.

The fourth *Griffin* factor weighs in favor of the state. Both parties concede that no strong-arm tactics or deceptive strategies were used by Det. James during questioning of defendant.

The fifth *Griffin* factor weighs in favor of defendant. Both parties concede that the atmosphere at the scene of the questioning was police dominated.

The sixth *Griffin* factor weighs in favor of defendant. The defendant was placed under arrest immediately following the termination of questioning.

In sum, defendant had become the focus of an investigation before questioning, he was not informed that he was free to leave nor did he possess unrestrained freedom of movement at any time during questioning, defendant did not initiate contact with the police, the atmosphere was police dominated, and defendant was placed under arrest at the termination of questioning. The totality of the circumstances indicates that defendant was in custody, and thus the police were required to inform defendant of his *Miranda* rights before subjecting him to an interrogation. Therefore, the trial court properly suppressed the statements of defendant, which were obtained through the custodial interrogation.

Based on the foregoing, we affirm the judgment of the trial court.

PAUL J. SIMON, P.J., and
KATHIANNE KNAUP CRANE, J.,
concur.