STATE of Missouri, Respondent,

v.

William DRAVENSTOTT, Appellant.

No. WD 61917.

Missouri Court of Appeals, Western District.

July 13, 2004.

John Maurice Schilmoeller, Appellate Defender Office, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea Kaye Spillars, Richard A. Starnes, Office of Attorney General, Jefferson City, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

William Dravenstott appeals his criminal convictions raising two points of error: (1) the trial court erroneously admitted certain evidence; and (2) his convictions for multiple counts of first-degree assault, sec-

tion 565.050, RSMo 2000,[1] and second-degree endangering the welfare of a child, section 568.050, required inconsistent findings of fact and, therefore, violated the Double Jeopardy Clause.[2] Dravenstott's claim that the trial court erred in admitting statements he made prior to being given *Miranda* warnings is denied because Dravenstott was not in custody at the time the statements were made. His Double Jeopardy claim is rejected because convictions for first-degree assault and second-degree endangering the welfare of a child do not require inconsistent factual findings.

### Facts and Procedural History

After a non-jury trial William Dravenstott was found guilty of three counts of first-degree assault in violation of section 565.050, three counts of armed criminal action in violation of section 571.015, and two counts of second-degree endangering the welfare of a child in violation of section 568.050. Dravenstott was also charged with, but found not guilty of, two counts of first-degree endangering the welfare of a child and two counts of armed criminal action. The concurrent sentences imposed were: ten years for one count of first-degree assault, five years for the other two counts of first-degree assault, three years for each count of armed criminal action, and one year for each count of second-degree endangering the welfare of a child.

Because Dravenstott does not challenge the sufficiency of the evidence, we accept " 'as true all evidence supporting the verdict, including all favorable inferences therefrom and disregard[ ] all contrary evidence and inferences.' " *State v. Thurston,* 104 S.W.3d 839, 840 (Mo.App.2003) (citing *State v. Dunn,* 21 S.W.3d 77, 79 (Mo.App. 2000)).

On the evening of April 15, 2001, Dravenstott and his girlfriend returned to their apartment complex after attending a family gathering at his sister's house. As the two were walking toward their apartment, they noticed two young teenagers, Antionne Nicholson and Shenecha Page, sitting and talking to each other near one of the buildings in the complex. An altercation between Dravenstott and the two teenagers ensued because, as Dravenstott testified, he thought Nicholson had "flipped him off." Dravenstott yelled at Nicholson, grabbed his shirt, threw his scooter into the street, and mooned him.

Nicholson said he was going to get his stepfather, Troy Wright, and Nicholson and Page went inside their apartment building. Dravenstott and Green also went to their apartment on the top floor of one of the nearby buildings. Dravenstott got a shotgun out of the closet, loaded it, and went to a window facing the street. Meanwhile, Wright had accompanied the children back outside and, upon seeing the scooter lying in the street with no one else around, he told Nicholson to retrieve it. As Nicholson moved toward the scooter, Dravenstott fired a shot from the window and Page, Wright, and Nicholson ran back toward their apartment building. When they got back to the building, Wright realized he had been hit by some of the shotgun pellets, and he fell to the ground. Wright suffered injuries to his colon and intestines, which required surgery to repair.

Dravenstott raises two points on appeal: (1) he claims that his convictions violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitu-

---

1. All statutory citations are to RSMo 2000, unless otherwise indicated.

2. U.S. CONST. amend. V.

tion as well as the provisions of section 556.041; and (2) he claims that the trial court erred in allowing Officer Myers to testify about statements Dravenstott made prior to being given *Miranda* warnings.

### Did Dravenstott's convictions for first-degree assault and second-degree endangering the welfare of a child violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and the provisions of section 556.041, RSMo 2000?

 The Double Jeopardy Clause of the Fifth Amendment, applied to the states through the Fourteenth Amendment, protects criminal defendants in two ways. *See State v. Gottsman*, 796 S.W.2d 27, 29 (Mo.App.1990). First, it prevents a criminal defendant from being subjected to multiple trials for the same offense. *Id.* (citing *Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978)). Second, it prevents a criminal defendant from being subjected to multiple punishments for the same offense. *Id.* With respect to the Double Jeopardy Clause's protection from multiple punishments, it has been said that the interest to be protected "is 'limited to ensuring that the total punishment [does] not exceed that authorized by the legislature.'" *Id.* (Quoting *Jones v. Thomas*, 491 U.S. 376, 109 S.Ct. 2522, 105 L.Ed.2d 322, 331 (1989)).[3] Therefore, "cumulative punishment may be imposed in a single trial if the legislature has made it clear that it intended the sentences to be cumulative." *Id.* (citing *Missouri v. Hunter*, 459 U.S. 359, 368–69, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983)).

The statutes at issue here do not provide whether cumulative punishment should be imposed when the same conduct is found to violate their provisions. *See* §§ 565.050, 568.050. The legislature adopted section 556.041 to provide the answer in a situation such as this. *Gottsman*, 796 S.W.2d at 29. Section 556.041 reads:

Limitation on conviction for multiple offenses

When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if

(1) One offense is included in the other, as defined in section 556.046 or

(2) Inconsistent findings of fact are required to establish the commission of the offenses; or

(3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or

(4) The offense is defined, as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

 Dravenstott makes two different arguments about why his convictions violated the Double Jeopardy Clause and section 556.041. He first focuses on the combination of the charge for first-degree endangering the welfare of a child and his conviction for first-degree assault. Dravenstott claims this charged combination violates section 556.041(3) because first-degree child endangerment is a specific

---

**3.** Missouri's Double Jeopardy Clause, Art. I § 19, has been interpreted to apply only after a defendant is acquitted, and, as a result, it is

not implicated in this matter. *Gottsman*, 796 S.W.2d at 29 n. 4 (citation omitted).

instance of first-degree assault in that it provides special protection to individuals under the age of seventeen. We need not reach the merits of this argument because Dravenstott completely misunderstands the protection afforded by the Double Jeopardy Clause and section 556.041.

The title of section 556.041 is "Limitation on *conviction* for multiple offenses." (emphasis added). As previously stated, the Double Jeopardy Clause protects criminal defendants from being subjected to multiple trials and unintended multiple punishments for the same conduct. *Gottsman,* 796 S.W.2d at 29. These protections do not extend, however, to a charge upon which Dravenstott was found not guilty. *See State v. Elliott,* 987 S.W.2d 418, 422 (Mo.App.1999). He was not convicted of first-degree child endangerment, and he, therefore, was not punished for the crime. His argument on this point fails.

Dravenstott's second argument focuses on the combination of his convictions for second-degree child endangerment and first-degree assault. He argues that this combination violates the Double Jeopardy Clause and section 556.041(2) because first-degree assault required a finding that he knowingly caused or attempted to cause serious physical injury while second-degree child endangerment only required a finding that he acted with criminal negligence. §§ 565.050, 568.050. As a result, he claims that inconsistent findings of fact were required to establish the two convictions.

### Standard of Review

■ First, we must note that Dravenstott only addressed this specific point of error in the body of his argument and failed to include it in his point relied on. As such, the brief is deficient, and we are not required to address the issue. *Superior Gearbox Co. v. Edwards,* 869 S.W.2d 239, 245 (Mo.App.1993). We may, however, review the issue for plain error according to Rule 30.20.

Additionally, the State argues that Dravenstott failed to preserve the issue for appeal because he actually submitted the instructions for both counts of second-degree child endangerment and " 'a defendant cannot complain of an instruction given at his request.' " *Thurston,* 104 S.W.3d at 842 (quoting *State v. Leisure,* 796 S.W.2d 875, 877 (Mo. banc 1990)). Because this was a non-jury case no jury instructions were required, although concededly they are advantageous to a court sitting as a trier of fact as well. We do not determine whether the submission of the instructions invited error for several reasons. Dravenstott does not claim the submission of the instructions was error. Rather, Dravenstott claims that his *convictions* for first-degree assault and second-degree child endangerment violate the Double Jeopardy Clause.

The State also argues another preservation issue. At the "instruction conference," defense counsel objected, claiming that the combination of *first-degree* endangering the welfare of a child and first-degree assault violated the Double Jeopardy Clause. Defense counsel did not object in any way to the combination of *second-degree* endangering the welfare of a child and first-degree assault. The first time defense counsel raised this specific point of error was on appeal.

■ While Dravenstott was not required to file a motion for new trial due to the fact this was a judge-tried case, Rule 29.11(e)(1), he must still satisfy the longstanding requirement that, " 'in order to preserve a constitutional issue for appellate review, it must be raised at the earliest time consistent with good pleading and orderly procedure and must be kept alive

during the course of the proceedings.'" *State v. Couts,* 133 S.W.3d 52, 54 (Mo. banc 2004) (quoting *State v. Wickizer,* 583 S.W.2d 519, 523 (Mo. banc 1979)). Dravenstott could conceivably have raised his double jeopardy claim at the time the court rendered its verdicts or certainly at the sentencing hearing but did not. Again, we do not need to resolve this issue because the required factual findings were not inconsistent and, therefore, his convictions for first-degree assault and second-degree endangering the welfare of a child did not violate section 556.041(2) and the Double Jeopardy Clause. The court, therefore, did not err in entering the judgments of conviction.

### Discussion

■ Section 565.050 states, "A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another." Section 568.050 provides, "A person commits the crime of endangering the welfare of a child in the second degree if: (1) He with criminal negligence acts in a manner that creates a substantial risk to the life, body or health of a child less than seventeen years old[.]" Dravenstott's argument boils down to an assertion that finding he knowingly attempted to seriously injure Nicholson and Page according to section 565.050, is inconsistent with finding that he acted with criminal negligence in creating "a substantial risk to the life body or health" of Nicholson and Page according to section 568.050. This argument, however, must fail.

"A person 'acts knowingly', or with knowledge, (1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist[.]" § 562.016.3(1). In contrast, "A person

'acts with criminal negligence' or is criminally negligent when he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow[.]" § 562.016.5. Based on these definitions alone, it might seem that Dravenstott's convictions did require inconsistent findings that he was aware of his conduct when he attempted to cause serious physical injury to Page and Nicholson, while at the same time he failed to be aware that his behavior created a substantial risk to the life, body or health of Page and Nicholson. The definitions must, however, be read in light of section 562.021(4).

Section 562.021.4 provides, "If the definition of an offense prescribes criminal negligence as the culpable mental state, it is also established if a person acts purposely or knowingly or recklessly." The behavior element associated with each offense, then, did not require inconsistent findings of fact because the trial judge could have found that Dravenstott acted with knowledge, satisfying both statutes.

Point denied.

### Did the trial court err in allowing Officer Myers to testify about statements Dravenstott made prior to being given *Miranda* warnings?

When the police arrived at Wright's apartment after the shooting, Nicholson told them what had happened, gave them a description of Dravenstott, and showed them which apartment the shot came from. On their way to the apartment, Officer Myers and two other officers noticed a man, who fit the description Nicholson gave them, and a woman descending the stairs from the very same apartment. The man and woman were walking toward the building's front door at ground level, and the three officers timed their approach so that they all met at the door at the same time. Officer Myers opened the door

somewhat swiftly and asked Dravenstott to step outside.

Over objection at trial, Officer Myers was allowed to testify:

Q. What did you ask him after he had stepped outside?

A. I asked if there had been a problem there that night.

Q. And what did he respond to you at that point in time?

\* \* \* \* \* \*

A. He stated, "I'm tired of these fucking niggers always starting shit. You can't even go outside and the niggers start shit. Ever since I've lived here these fucking niggers have fucked with me."

\* \* \* \* \* \*

Q. And did you attempt to further question the defendant at that time?

A. If I may go back. Before I advised Officer Minter to advise him of the Miranda rights, I asked Mr. Dravenstott if a shot had been fired that night, and he stated, yes, that he had fired the shot.

Q. Okay. And did he make any kind of statement as to where or how he had fired the shot? Did he elaborate in any way?

A. No.

Q. Based upon that information, is it at that time that you determined that you were going to place him under arrest?

A. Yes. And that's when I advised Officer Minter to go ahead and advise him of his Miranda rights.

Q. And Officer Minter did that?

A. Yes, he did.

Dravenstott argues on appeal that Officer Myers' testimony was improperly admitted because Dravenstott was in custody at the time of the questioning and had not been given *Miranda* warnings.

## Standard of Review

■ Rule 24.05 provides, "Requests that evidence be suppressed shall be raised by motion before trial; however, the court may in its discretion entertain a motion to suppress evidence at any time during trial." This requirement has been applied to the suppression of evidence arguably obtained during a custodial interrogation without the benefit of *Miranda* warnings. *See State v. Conn,* 950 S.W.2d 535, 537 (Mo.App.1997). The State argues that we should review this point only for plain error because Dravenstott failed to preserve the point for appeal by not filing a pre-trial motion to suppress the statements he now argues were made during a custodial interrogation without the required *Miranda* warnings. We disagree.

In support of this argument, the State relies on *State v. Galazin,* 58 S.W.3d 500 (Mo. banc 2001). In *Galazin,* the defendant was charged with driving while intoxicated. *Id.* at 502. When the State asked the arresting officer during direct-examination to describe the defendant's erratic driving, defense counsel objected on the bases of foundation and relevance because the arresting officer was outside of his jurisdiction at the time of the arrest, and the State did not prove the existence of a mutual aid contract between the two city governments. *Id.* at 502–03. Defense counsel did not file a pre-trial motion to suppress the officer's observations and did not in his objection at trial or on appeal ever directly assert that his arrest violated the Fourth Amendment protection from unreasonable searches and seizures. *Id.* at 505.

The trial court ultimately overruled the defendant's objection and allowed the officer to testify about his observations of the defendant's driving. *Id.* at 503. In coming to the conclusion that the defendant

failed to preserve this point for appeal, the court analyzed whether the objections the defendant did make during the officer's direct-examination could be considered a motion to suppress. *Id.* at 505. The court found that the objections could not be considered a motion to suppress made during the trial as authorized by Rule 24.05. *Id.* The facts that led the court to this conclusion are, however, very different from the facts of this case.[4] *Id.*

The court found the objections made at trial could not be considered a motion to suppress the officer's observations on Fourth Amendment grounds for two related reasons: (1) the actual objection was based on a rule of evidence, and an evidentiary objection will not preserve a claim for unlawful search and seizure, *Id.* (citing *State v. Anderson,* 698 S.W.2d 849, 851 (Mo. banc 1985)); and (2) a motion to suppress is based on an assertion of the accused's constitutional right to be free from unreasonable searches and seizures, and the defendant did not during the trial or on appeal raise a Fourth Amendment issue. *Id.*

Similar reasoning was applied in the context of an alleged *Miranda* violation in *Conn,* 950 S.W.2d at 537. There, the defendant argued on appeal that the trial court erred in allowing a Division of Family Services agent to testify about statements the defendant made to him during what the defendant argued was a custodial interrogation conducted without the benefit of *Miranda* warnings. *Id.* at 535–36. No pre-trial motion to suppress was filed, however, and the only objection at trial

was that the State did not, prior to asking the DFS agent to relay the defendant's statements, present evidence of the defendant being given *Miranda* warnings. *Id.* at 537.

The trial court found that the defendant had not preserved his point for appeal because he did not file a pre-trial motion to suppress the statements or move to suppress the statements during the trial as required by Rule 24.05. *Id.* The actual objection was based on an inaccurate belief that the State was required to prove the defendant had been given *Miranda* warnings. *Id.* Because the objection did not seek to suppress the statements as the product of a custodial interrogation without the benefit of *Miranda* warnings, the court found the objection could not be considered a motion to suppress. *Id.*

The facts that distinguish *Galazin* and *Conn* from the present situation go to the very heart of both holdings. When the State asked Officer Myers on direct-examination to relay what Dravenstott said when they met at the apartment building's front door, defense counsel objected:

I'm going to object. First of all, as presented at this point the foundation I'm hearing is that statements are made in response to a question by this officer that were intended to elicit basically some sort of incriminating or confessional statement.

And from what the officer is indicating that he had basically apprehended Mr. Dravenstott at that point and had then asked him these questions without

---

4. Because the basis for suppression of the officer's observations was the Fourth Amendment and not the Fifth Amendment protection from self-incrimination, as in this case, it is important to note exactly which part of *Galazin* is applicable here. Several procedural requirements specific to preserving a point of error concerning evidence allegedly obtained in violation of the Fourth Amendment are discussed in the opinion. *See* § 542.296; *Galazin,* 58 S.W.3d at 504–06. On these points the *Galazin* opinion is inapplicable. The discussion about whether the defendant's objection at trial could be considered a motion to suppress in compliance with Rule 24.05, however, is applicable. *See* 58 S.W.3d at 505.

offering any Miranda Warning or anything like that.

So I'm going to object that it violates Mr. Dravenstott's 5th Amendment right to remain silent, and his Missouri Constitutional right to the same thing.

The prosecutor withdrew the question and told the judge he would ask Officer Myers more about the circumstances surrounding Dravenstott's statements.

When the prosecutor finished this inquiry, he again asked Officer Myers to relay Dravenstott's statements. Defense counsel objected once again stating:

I mean, again, I think the issue of custodial interrogation, that issue is not defined by the police officer's interpretation, but it seems to be defined by the circumstances.

What I'm saying is the circumstances clearly show Mr. Dravenstott was a suspect. The officer had probable cause to believe that. That officer detained him specifically because he was the suspect, and he was not free to leave at that time.

That's my objection, Judge.

The judge overruled defense counsel's second objection and allowed Officer Myers to testify about Dravenstott's incriminating statements.

In contrast to *Galazin* and *Conn,* defense counsel in this case did specifically object to the admission of Dravenstott's incriminating statements on constitutional grounds, i.e., that the statements were made during a custodial interrogation conducted without *Miranda* warnings. Following the objection the trial judge heard Officer Myers testify about the particular circumstances surrounding the statements. The trial judge specifically overruled defense counsel's objection that Officer Myers' testimony showed Dravenstott was in custody when the statements were made. This examination, then, did satisfy Rule 24.05 in that the trial judge exercised his discretion to rule on whether or not the statements should be suppressed during the trial. Dravenstott's point of error was, therefore, preserved for appeal.

We will affirm the trial court's ruling if it is sufficiently supported by the evidence. *State v. Taylor,* 109 S.W.3d 190, 192 (Mo. App.2003). In making this determination, "we view all facts and reasonable inferences in favor of the trial court's ruling." *Id.* (citing *State v. Dye,* 946 S.W.2d 783, 786 (Mo.App.1997)).

## Discussion

■ Dravenstott argues that the statements he made to Officer Myers should have been suppressed because they were the product of a custodial interrogation conducted without *Miranda* warnings in violation of the Fifth Amendment and Article I, section 19 of the Missouri Constitution. The Missouri constitutional issue will be analyzed consistently with the Fifth Amendment issue. *State v. Werner,* 9 S.W.3d 590, 595 (Mo. banc 2000) (citation omitted).

■ In compliance with an individual's Fifth Amendment protection from self-incrimination, a criminal suspect must be given *Miranda* warnings prior to any "custodial interrogation." *Id.* (citing *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). " 'Custodial interrogation' occurs either when a suspect is formally arrested or under any other circumstances where the suspect is deprived of his freedom of action in any significant way." *Id.* (citation omitted). After stating that a suspect's status of being "in custody" at a particular moment depends on the totality of the circumstances, the Missouri Supreme Court in *Werner* outlined six factors, in addition to the purpose, place, and length of the inter-

rogation, that bear upon the determination of whether a suspect is "in custody":

(1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not under arrest;

(2) whether the suspect possessed unrestrained freedom of movement during questioning;

(3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to answer questions;

(4) whether strong arm tactics or deceptive stratagems were employed during questioning;

(5) whether the atmosphere was police dominated; or,

(6) whether the suspect was placed under arrest at the termination of questioning.

*Id.*

In this case, the circumstances do not require us to go through a detailed analysis of each factor. As stated in *State v. Hicklin*, "[a] person who is asked preliminary, investigatory questions by police officers is not in custody." 969 S.W.2d 303, 310 (Mo.App.1998) (citation omitted). " 'General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by [the *Miranda* ] holding.' " *Id.* (citation omitted). Even when the police have reason to suspect that the person they are questioning was somehow involved in a crime, a *Miranda* warning is not required unless that person is "in custody." *Id.* (citation omitted).

Dravenstott was clearly not "in custody" when he made the incriminating statements to Officer Myers. Though Officer Myers did suspect that Dravenstott was involved in the shooting based on Nicholson's information, that fact does not change the investigatory nature of the questioning. *See id.* The questioning occurred on the scene, was the product of an uncontrived meeting of the parties at the apartment building's front door, and consisted of only two non-accusatory questions: (1) was there a problem here tonight; and (2) was a shot fired tonight. Because Dravenstott was not "in custody" when he made the incriminating statements to Officer Myers, the trial court's decision not to suppress the evidence was not error.

Point denied.

The judgment is affirmed.

ROBERT G. ULRICH, Judge, and JAMES M. SMART, JR., Judge, concur.