**STATE of Missouri, Plaintiff–Respondent,**

v.

**Robbie Ray HUFFMAN, Defendant–Appellant.**

**No. SD 31375.**

Missouri Court of Appeals,
Southern District,
Division One.

July 30, 2012.

Ellen H. Flottman, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and, Dora A. Fichter, Assistant Attorney General, Jefferson City, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

Robbie Ray Huffman ("Defendant") appeals his conviction after a jury trial of the class B felony of attempt to manufacture a controlled substance (methamphetamine). *See* section 195.211.[1] In two points relied on, Defendant contends that: 1) the trial court plainly erred in admitting into evidence a pre-trial statement he made to a law enforcement officer because there was "no showing by the state that [Defendant] was given his *Miranda* [2] warnings prior to being questioned in custody by [the

officer;]" and 2) the trial court abused its discretion in overruling his objection to the admission of his "prior conviction of methamphetamine manufacturing" because it violated his right to be tried only for the offense charged. Finding no merit in either contention, we affirm the judgment of the trial court.

**Facts and Procedural Background**

Viewed in the light most favorable to the judgment, the evidence was as follows. On July 23, 2009, Defendant came into a Wal–Mart store in Kennett and purchased "hypodermic needles and [ ] instant cold compress packs." The store's pharmacist testified that he was familiar with Defendant, who was frequently in the store. The pharmacist was aware that the cold packs purchased by Defendant contained "a solvent of some sort[.]" He recalled that Defendant had also come into the store the day before and had purchased pseudoephedrine. The pharmacist knew that those items, taken together, could be used in the manufacture or abuse of drugs.

Because he had been asked to report any suspicious actions taken by certain individuals, a group that included Defendant, the pharmacist reported Defendant's purchases to officer James Decker of the Bootheel Drug Task Force. He also reported that another person he was familiar with and who was a member of that group, Chris Crittendon, had also purchased pseudoephedrine on July 23, 2009. Officer Decker shared this information with Kennett Police Department detective Jeremy Yates, who observed Defendant with Crittendon later that same afternoon.

Upon seeing the two men together, Detective Yates followed them as they traveled in Crittendon's truck to Defendant's

1. All statutory references are to RSMo Cum. Supp.2011.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

residence in Kennett and then watched them go inside. Detective Yates alerted officer Decker, who then joined him at that location. After officer Decker arrived, the two officers knocked on the door but received no response. Detective Yates noticed "a strong chemical smell coming from one of the north windows[.]" After knocking again to no response, the officers became concerned about the safety of those inside the residence. They then "[d]ecided to force open the door and check for anyone inside the residence[.]"

Once inside, Detective Yates first saw Crittendon. He then saw Defendant walk out of·the bathroom with his hands and forearms "all soaking wet." The officers took Defendant and Crittendon outside. After Defendant refused to give consent to a search of his residence, officer Decker obtained a search warrant. Defendant and Crittendon were taken to the police station.

A search of Defendant's yard yielded a 20–ounce "Mountain Dew" bottle located inside a sock. Officer Decker suspected that the bottle had been used in the methamphetamine manufacturing process, and he regarded it as a hazardous material because "it was extremely pressurized." Officer Decker thought the bottle "could explode at any time with the chemicals in it[,]" so he delivered it to the "Kennett Fire Department DNR bunker to be properly disposed of[.]" Officer Decker said that a small amount of methamphetamine may be manufactured "in a 20–ounce soda bottle" using a method known as "a shake and bake lab." After processing particular ingredients in the bottle, including some material that may be obtained from instant cold packs, the contents are commonly poured through coffee filters to separate the methamphetamine from the other ingredients. Officer Decker testified that the process produces an odor like the one

he smelled at Defendant's residence. Overexposure to the gas produced during a "shake and bake" can result in unconsciousness and, eventually, death.

A subsequent search of Defendant's residence revealed instant cold packs, ceramic plates with some sort of residue on them, pieces of lithium batteries, spoons with residue, a white pipe, damp coffee filters that had a chemical smell, a small piece of burned aluminum foil, two leaking bottles of "Drano" drain cleaner, and store receipts for storage bags, pliers, "Coleman fuel," and Mountain Dew. Officer Decker suspected that each of these items had been used to either manufacture or ingest methamphetamine.

The officers also searched Crittendon's vehicle and seized two cans of "Heat" deicer. "Heat" contains another solvent that is commonly used in the manufacture of methamphetamine. When Crittendon was searched, the officers found ".4 grams of methamphetamine inside [his] wallet[.]" No pseudoephedrine pills or their packaging were found anywhere on the premises. This would not be unusual if the pills were purchased to manufacture methamphetamine because the buyer often discards the packaging, and the actual pills would be transformed from their pill form during the manufacturing process. The residue on the plates seized from the home was later determined to contain methamphetamine.

Officer Decker contacted Defendant at the police station and was allowed to testify at trial as follows about statements Defendant made during that encounter:

[Prosecutor:] And did [Defendant] say anything to you regarding the items that were found?

[Officer Decker:] He did.

[Prosecutor:] And what did he tell you?

[Officer Decker:] [Defendant] denied any knowledge of any of the items at the house. [Defendant] further stated that—

[Defense Counsel]: Your Honor, I'm going to object to this. No foundation that there was any warning or [Defendant] had been Mirandized for the statement to be used against him.

[Trial Court]: Overruled. He may answer.

[Officer Decker:] [Defendant] stated that he used methamphetamine on a regular basis, however, did not manufacture methamphetamine and would not know the first thing about manufacture of methamphetamine due to the fact that he had never manufactured methamphetamine before.

[Prosecutor:] And at some point later, did you determine differently?

[Officer Decker:] I'm sorry?

[Prosecutor:] At some point later did you determine differently?

[Officer Decker:] Yes. I found out that he had actually been charged prior and I believe convicted prior for manufacture of methamphetamine.

State's Exhibit 1, a certified copy of Defendant's 2001 judgment and sentence for manufacturing methamphetamine, was admitted into evidence over defense counsel's continuing objection. Defendant did not testify.

Defendant filed a motion for new trial that, among other things, challenged the admission of evidence concerning Defendant's prior conviction and the admission of Defendant's statement to Officer Decker. But the motion's legal basis for chal-

lenging the admission of Defendant's statement was that the statement was used "solely for the purpose of allowing the State to introduce evidence of Defendant's prior conviction"—it made no claim of a *Miranda* violation. The trial court denied the motion for new trial and sentenced Defendant to 12 years imprisonment as a persistent offender. This appeal timely followed.

## Analysis

### *Point I: No evidence of* Miranda *warning*

■ Defendant's first point alleges the trial court plainly erred in permitting officer Decker to testify about his pre-trial statements "because the statements were taken in violation of [Defendant's] privilege against self-incrimination and right to due process of law ... in that there was *no showing by the state* that [Defendant] was given his *Miranda* warnings prior to being questioned in custody by Officer Decker." (Emphasis added.)[3] Because the State was not required to lay such a foundation in the absence of a proper, prior request to suppress the statement, we deny the point.

Defendant acknowledges that although he objected to the admission of his statement on this basis at trial, he did not file a pretrial motion to suppress his statement and did not include the claim in his motion for new trial. As a result, Defendant seeks plain error review under Rule 30.20.[4] *See State v. Young,* 230 S.W.3d 30, 32 (Mo.App. E.D.2007) ("An issue not raised in the motion for a new trial is not preserved for appeal").

---

3. Defendant's additional contention that he was prejudiced because the statement "was used to justify the admission of a prior conviction for manufacture of methamphetamine which was otherwise inadmissible[ ]" will be addressed in our analysis of his second point.

4. All rule references are to Missouri Court Rules (2012).

"Plain error is evident, obvious and clear error." *State v. Garrison*, 276 S.W.3d 372, 374 (Mo.App. S.D.2009). Plain error review is discretionary and should occur only when the alleged error involves "substantial rights" and results in a "manifest injustice or miscarriage of justice." Rule 30.20. Defendant has the burden of establishing that the trial court committed plain error *and* that it resulted in a manifest injustice or miscarriage of justice. *State v. Green*, 358 S.W.3d 546, 548 (Mo.App. S.D.2012). Only if we find that the trial court committed error that is "evident, obvious and clear" do we next proceed to determine whether it resulted in a manifest injustice or miscarriage of justice. *Id.* (quoting *State v. Jennings*, 322 S.W.3d 598, 601 (Mo.App. S.D.2010)).

Here, Defendant argues that "[t]here was no showing that [he] was read his *Miranda* warnings before he was questioned in custody at the police station." Defendant points out that the privilege against self-incrimination requires police to warn someone in custody of his right to remain silent, citing *State v. Mahan*, 971 S.W.2d 307, 314 (Mo. banc 1998). He further urges that a trial objection may be considered a motion to suppress made during trial, citing *State v. Dravenstott*, 138 S.W.3d 186, 193–94 (Mo.App. W.D.2004), and *State v. Conn*, 950 S.W.2d 535, 537 (Mo.App. E.D.1997).

The State agrees that statements produced by a custodial interrogation that is not preceded by *Miranda* warnings are inadmissible, citing *State v. Gaw*, 285 S.W.3d 318, 321 (Mo. banc 2009), and would no doubt concede that the privilege against self-incrimination is a substantial right. But the State also cites the proclamation in *Conn* that "[a]bsent a timely motion to suppress, there is no error in admitting a defendant's statements with-out a showing that *Miranda* has been satisfied." *Conn*, 950 S.W.2d at 537.

In *Conn*, as in the instant case, the defendant did not file a pretrial motion to suppress his statements. When a state services investigator was asked at trial about the defendant's previous statements, defense counsel objected, stating, "There's been no showing that [the defendant] was read his rights per the Miranda decision. I was waiting for it; I did not hear it. The State would not be able to adduce any statements that they were made—that were made against him." *Id.* at 536. The Eastern District held that the issue was not preserved for review because no motion to suppress the statement had been made and that the record did not support a claim of plain error because the investigator and defendant (upon testifying) *were not asked* whether the officer gave the defendant a *Miranda* warning before questioning him. *Id.* at 537. In light of the lack of such evidence, there was no basis to support a finding that such warnings were not, in fact, given. *Id.*

The defendant in *Dravenstott* had also not filed a pretrial motion to suppress, but his claim that his responses to a police officer's questions were inadmissible as obtained in violation of *Miranda* was found by the Western District to have been preserved for review because his particular trial objection was sufficient to serve as a motion to suppress and the evidence showed that the defendant was "basically apprehended" and then questioned without a *Miranda* warning having been given. 138 S.W.3d at 194–95. The prosecutor in that case also responded by stating that he would ask additional questions about the facts surrounding the making of the statements and then proceeded to do so. *Id.* at 195. Perhaps most importantly, the evidence adduced at Davenstott's trial included the officer's testimony that the defen-

dant was advised of *Miranda* rights only *after* he was asked about and admitted firing a gun. *Id.* at 193.

The differences between *Dravenstott* and *Conn* are instructive here, with the instant circumstances being very similar to those present in *Conn* and distinguishable from those present in *Dravenstott.* Because Defendant had not filed a motion to suppress his statements, he could not have expected the State to lay a *Miranda* foundation before offering his statements into evidence. *See Conn,* 950 S.W.2d at 537. And, saliently, his objection is limited to a *lack of a Miranda foundation.* He did not (and does not) contend that his *Miranda* rights were actually violated; he does not assert that he was in custody when he made statements, that those statements were the product of interrogation, and that he had not been given his constitutional warnings before making them.[5]

Defendant also does not claim that any evidence was adduced about whether a *Miranda* warning was actually given before Defendant made his statement to officer Decker. What the record does reveal is that during his initial arguments on Defendant's motion *in limine* to exclude any evidence of his prior conviction, defense counsel stated, "And one other thing, Judge. I don't know that at that time that [Defendant] had been properly Mirandized. I don't think it's in the record that he was." Particularly in the context of a request for plain-error review, this is a significantly different position from an affirmative claim that Defendant's statement was made during a custodial interrogation without a *Miranda* warning having been given. Under these circumstances, the court did not err, plainly or otherwise, in

denying Defendant's objection. Point one is denied.

*Point II: The admission of Defendant's prior conviction*

Defendant's second point contends the trial court abused its discretion in admitting evidence of Defendant's prior conviction for manufacturing methamphetamine because the conviction was "relevant to show [Defendant's] knowledge of the methamphetamine manufacturing process *only* because the state introduced his denial of such knowledge in order to bootstrap the admission of the prior conviction." (Emphasis as stated in original.) We disagree.

"The trial court has broad discretion over the relevancy and admissibility of evidence, and [its] determination on these issues will not be reversed absent an abuse of discretion." *State v. Collins,* 962 S.W.2d 421, 424 (Mo.App. W.D.1998).

A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State v. Blakey,* 203 S.W.3d 806, 811 (Mo.App. S.D.2006). Furthermore, reversal is appropriate only if the error was so prejudicial that it deprived the defendant of a fair trial.

*State v. White,* 329 S.W.3d 710, 712 (Mo. App. S.D.2010). "When reasonable minds can disagree as to the action taken by the trial court, then the trial court has not abused its discretion." *State v. Edberg,* 185 S.W.3d 290, 293 (Mo.App. S.D.2006).

█ Defendant is correct in asserting that he may be tried only for the offense

---

**5.** While it seems likely that Defendant was in custody at least part of the time that he was at the police station as he was removed from his residence and transported there, the record is devoid of any evidence about the actual circumstances at the time of his statement.

currently charged and that evidence of his prior misconduct must be both logically and legally relevant to proving that charge. *State v. Davis*, 211 S.W.3d 86, 88 (Mo. banc 2006). Evidence is logically relevant when it has a legitimate tendency to prove directly a defendant's guilt, and it is legally relevant when "its probative value outweighs its prejudicial effect." *Id.*

The State suggested to the trial court that, in addition to Defendant's prior conviction being relevant as inconsistent with his denial of any knowledge about how to manufacture methamphetamine, one of the elements it had to prove was that Defendant intended to manufacture methamphetamine and that it had to do so in a situation where "not all the ingredients necessary to complete that manufacture were present." After hearing each attorney's arguments, the trial court stated, "All right. I believe this to be a close question and the [c]ourt will overrule defense motion and indicate its intent to permit this testimony when offered by the State."

■ The claim is preserved for appellate review as Defendant was granted a continuing objection to the admission of the evidence as stated in his motion *in limine*, defense counsel specifically objected when the State offered a certified copy of the conviction into evidence, and the issue was carried forward in Defendant's motion for new trial.

■ Defendant's argument is that "the only value to the prior conviction was to refute [Defendant's] statement to the police that he did not know how to make methamphetamine." He insists that the statement was inadmissible and that "[t]his sort of maneuvering has been found to be error by this [c]ourt in other contexts."[6] But Defendant cites no authority for the proposition that a false denial of knowledge about how to manufacture methamphetamine is not logically relevant to the charge of attempting to manufacture it. To the contrary, "[s]ubstantial case law supports the evidentiary precept that exculpatory statements, when proven false, evidence a consciousness of guilt and so bear directly on the issue of innocence before the trier of fact." *State v. Ross*, 606 S.W.2d 416, 425 (Mo.App. E.D.1980); *see also State v. Speaks*, 298 S.W.3d 70, 83 (Mo.App. E.D.2009) (other guns found at scene admissible in part as false exculpatory evidence where defendant denied possessing or using a gun since he was a teenager).

Further, even if Defendant had not specifically denied knowing how to make methamphetamine, the State still "had to prove that the defendant had the intent to manufacture methamphetamine and that he performed an act that was a substantial step toward manufacturing methamphetamine." *State v. McLarty*, 327 S.W.3d 557, 568 (Mo.App. S.D.2010). In *State v. Mickle*, 164 S.W.3d 33, 50 (Mo.App. W.D. 2005), the Western District held that evidence of knowledge of manufacturing was not *required to* prove possession of chemicals with intent to manufacture and that such knowledge was not enough *by itself* to prove intent. In so doing, it also acknowledged "that common sense and logic dictate that evidence of a defendant's

---

**6.** The cases cited by Defendant as analogous are not persuasive as they address hearsay evidence that met no exception to the hearsay rule. *See State v. Revelle*, 957 S.W.2d 428, 433 (Mo.App. S.D.1997) ("hearsay note" written by victim could not be used by state to refute an issue "not yet injected" by defense) and *State v. Kelley*, 953 S.W.2d 73, 84 (Mo. App. S.D.1997) (hearsay statements were inadmissible under doctrine of curative admissibility where state first interjected issue of whether defendant and victim's separation was amicable).

knowledge of how to manufacture methamphetamine would be relevant in determining whether he actually intended to act[.]" Such is the case here. Defendant's prior conviction for manufacturing methamphetamine was logically relevant to proving his intent to manufacture methamphetamine.

In weighing the probative value of this evidence against any unfair prejudice to determine its legal relevance, "the defendant's intent must be a legitimate issue in the case." *State v. McCoy*, 175 S.W.3d 161, 163 (Mo.App. E.D.2005). In *McCoy*, the Eastern District found that the trial court erroneously admitted a prior conviction for possession of precursor ingredients with intent to manufacture methamphetamine for the purpose of showing intent to manufacture methamphetamine in the charged case when the need for the evidence "was slight" and the degree of prejudice was high. *Id.* at 164. The methamphetamine lab in question was discovered "at another friend's house" sometime after "the manufacturing activity [had] stopped[,]" and McCoy was not present. *Id.* at 162. In addition to offering McCoy's prior conviction as evidence, the prosecutor also referred to the prior conviction in both his opening statement and closing argument. *Id.* at 163. In finding the prior conviction more prejudicial than probative under those circumstances, the court stated:

> [I]n this case, McCoy did not claim ignorance of the methamphetamine production process or a lack of familiarity with the items used to manufacture the drug. Rather, he argued that the only direct evidence that he was even present in the lab was [his friend's] testimony, which he argued was not credible, and that the police did not find him in possession of any methamphetamine paraphernalia. While this evidence and argument put McCoy's participation in the crime at

issue, it did not, as the State claims, thereby raise the specific issues of his intent to commit the crime or his knowledge of how to manufacture methamphetamine. General denial of involvement in the crime is not sufficient to make intent a legitimate issue.

*Id.* at 164.

Thus, while *McCoy* and the instant case are similar in regard to the prior convictions and charged offenses at issue, there are also significant differences between them. McCoy did not claim ignorance of the manufacturing process; Defendant told officer Decker that he did "not know the first thing about" it. Here, Defense counsel also elevated the importance of the element of intent when he notified the jury in his opening statement that the critical ingredients for manufacturing methamphetamine—ephedrine or pseudoephedrine—were not found in the home, that "the makings of a meth lab" were not in the residence, and that other items such as coffee filters and Drano "were where they should be in any household."

Before the trial court finally denied Defendant's request to exclude any evidence of his prior conviction and before officer Decker was asked about the statement, defense counsel had already cross-examined the Wal–Mart pharmacist about the legitimate use of pseudoephedrine pills. The pharmacist was allowed, over the State's objection, to answer the question, "They're used for people who have bad sinus problems like [Defendant?]" Defense counsel had also elicited from the pharmacist that the normal dose of the product Defendant purchased on July 23, 2009 was two pills a day, that at that rate of use a box would constitute a ten-day supply, and the store's records indicated that over the course of three-and-a-half years Defendant had purchased the sub-

stance 25 times—an average of one box every two months.

Defendant's defense strategy, unlike McCoy's, was to attempt to explain that his intended use for the purchased and seized items was ordinary—not illegal. In other words, that it was not his intent to use the materials to manufacture methamphetamine. Also, unlike *McCoy,* the State did not refer to Defendant's prior conviction in either its opening statement or its closing arguments. Here, the element of intent was central to the case, and the State did not highlight Defendant's prior conviction by referring to it in either opening statement or closing argument. As a result of these important differences, we do not find *McCoy* applicable.

Under the circumstances present in the instant case, we cannot say that the trial court's decision to admit the evidence of Defendant's prior conviction was "clearly against the logic of the circumstances [before the court] and [ ] so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Blakey,* 203 S.W.3d 806, 811 (Mo.App. S.D.2006). Point II is also denied, and the judgment of the trial court is affirmed.

NANCY STEFFEN RAHMEYER, and GARY W. LYNCH, JJ., CONCUR.